## United States District Court

for the

District of Colorado

Civil Division

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2019 DEC 10 AM 10:37

JEFFREY P. COLWELL
CLERK

BY_____ DEP. CLK

| | |
|---|---|
| _____Landon Mondragon_____ ) | |
| Plaintiff ) | |
| V ) | Civil Action No. 1:19-cv-1437 |
| _____NOSRAK and Kasey King_____ ) | |
| Defendant ) | |

## Motion in a Civil Action

1. Rule 11 (b) Sanctions

The council Richard Liebowitz has neglected to properly review the facts of the case with Mondragon vs King/Nosrak. Mr. Liebowitz (Copyright Troll) has failed to conduct a reasonable inquiry into the facts of our case before filing this lawsuit. I believe that with true reliable and honest council Mr. Mondragon would have been informed that his case lacked the merit and substance to proceed. The metadata for the photos is not those of Mr. Liebowitz client but the photographer Jessica Moore (JESSJOFE Friend Photography Exhibit H). Jessica Moore has only been named by my response to the complaint for civil action and not by either Mr. Mondragon or Mr. Liebowitz. Mr. Mondragon has illegally obtained these photographs, submitted them for copyright and created a false claim in an action to harass Nosrak and Kasey King. It is also the actions of Mr. Liebowitz that have falsely directed Mr. Mondragon. Mr. Liebowitz seeks to lengthen this case for his own personal financial gain. To further identify the character of Mr. Mondragon's Council I have included documents outlining by Mr. Liebowitz conduct in court as well as intentionally deceiving the court in regards to a court appearance absence and his wife's 93 year old mothers unfortunate death. I believe Mr. Mondragon and Mr. Liebowitz Should be responsible for all Legal costs Nosrak or Kasey King will accumulate due to the defense of false claims and allegations.

2. Conduct of Council

Reason.com

    a. From U.S. District Judge Louise W. Flanagan's order filed several days ago in _Masi v. Mythical Entertainment, Bradley v. Analytical Grammar, Inc._, and _Sands v. Epicstream, LLC_ (E.D.N.C.):

These matters assigned to the undersigned, where each plaintiff appears through Richard P. Leibowitz, Esq., come now before the court of its own initiative. Attorneys in good standing of the bar of a United States Court and the bar of the highest court of any state may practice in this court for a particular case in association with a member of the bar of this court. Local Civil Rule 83.1(e)(1). It appears Mr. Leibowitz's standing has been called into question in the United States District Court for the Southern District of New York. Referred to as a "copyright troll," in a case involving one of the plaintiffs named above, a district judge recently observed "Mr. Leibowitz has been sanctioned, reprimanded, and advised to 'clean up [his] act' by other judges of this Court." _Sands v. Bauer Media Grp. USA, LLC_, No. 17-CV-9215 (LAK), 2019 WL 4464672, at *1 (S.D.N.Y. Sept. 18, 2019). Serious sanctions were imposed by the judge in that case on account of plaintiff's discovery deficiencies, including requirement that Mr. Leibowitz personally pay defendant's fees associated with advancing its motion to dismiss as a sanction for alleged discovery misconduct.

This judge joins the chorus of those telling this attorney to clean up his act. The dockets of each of the cases assigned to me, wherein this attorney represents a plaintiff, are littered with deficiency notices. This is a harbinger for troubled litigation ahead.

In *Matthew Bradley*, initiated by complaint filed June 18, 2019, Mr. Liebowitz was noticed June 19, 2019, to file notice of appearance. It took over two months for him to bring himself into compliance. In *Steve Sands*, filed August 8, 2019, he was noticed of numerous deficiencies at the case's start including those noted below:

| 08/08/2019 | ☉ | NOTICE OF DEFICIENCY regarding 1 Complaint - Payment of the civil filing fee is due upon case initiation. Payments can be made in the form of cash, checks, or credit cards and paid at the clerk's office during regular business hours. Credit card payments can be made over the telephone to the clerk's office during regular business hours. Also, Pay.gov is an additional credit card option that allows the filer to pay filing fee contemporaneously with the case opening in CM/ECF. (See Section V.D(1)(a) of the CM/ECF Policies and Procedures Manual. (Rudd, D.) (Entered: 08/08/2019) |
|---|---|---|
| 08/08/2019 | ☉ | NOTICE OF DEFICIENCY regarding [1-3] Proposed Summons and [1-4] Civil Cover Sheet. Counsel should refile the Proposed Summons and Civil Cover Sheet by filling out the document in full and "flatten" the document prior to attaching it in accordance with Section IV.B of the CM/ECF Policies and Procedures Manual. Counsel should use the event "Notice-Other" to file those documents. (Rudd, D.) (Entered: 08/08/2019) |
| 08/08/2019 | ☉ | Notice to Counsel - Counsel did not properly identify attachments pursuant to Section V.E of the CM/ECF Policies and Procedures Manual. Attachments must be clearly labeled (i.e., "Exhibit A" is not a sufficient description). Additionally, when filing a document with more than five attachments, the first attachment must be an index of all of the subsequent attached documents. No further action is needed. (Rudd, D.) (Entered: 08/08/2019) |

Counsel also was noticed of requirement in *Steve Sands* to associate local counsel:

| 08/08/2019 | ☉ | NOTICE OF DEFICIENCY regarding 1 Complaint - Out of State Counsel must comply with Local Civil Rule 83.1 of the Eastern District of North Carolina. (Rudd, D.) (Entered: 08/08/2019) |
|---|---|---|

The same notice was [repeated] August 27, 2019, and disregarded by the attorney. This court had to issue an order nearly two months after opening of the case, expressly drawing this deficiency to Mr. Liebowitz's attention. If no appearance is made by the stated deadline of October 10, 2019, absent some showing of good cause, this case will be dismissed.

In *Alessandro Masi*, just filed September 30, 2019, a number of deficiencies immediately were noted by the clerk:

| 10/01/2019 | ☉ | NOTICE OF DEFICIENCY regarding 1 Complaint. Counsel did not properly identify exhibits pursuant to Section V.E. of the CM/ECF Policies and Procedures Manual (i.e., "Exhibit A" is not a sufficient description). Additionally, when filing a document with more than five exhibits, the first attached exhibit must be an index of all of the subsequent attached documents. Counsel is directed to refile. (Collins, S.) (Entered: 10/01/2019) |
|---|---|---|
| 10/01/2019 | ☉ | Notice to Counsel - Counsel should file a Notice of Appearance pursuant to Local Civil Rule 5.2(a). (Collins, S.) (Entered: 10/01/2019) |
| 10/01/2019 | ☉ | NOTICE OF DEFICIENCY - Failure to File Financial Disclosure Statement as to Alessandro Masi. Pursuant to 7.1 of the Federal Rules of Civil Procedure and Local Civil Rule 7.3, all parties shall file a financial disclosure statement. A negative statement is required if a party has no disclosures to make. The disclosure statement must be on a form provided by the clerk. This form is available at the clerk's office and on the court's website. (Collins, S.) (Entered: 10/01/2019) |
| 10/01/2019 | ☉ | Notice to Counsel regarding: 1 Complaint. Exhibits 4 and 5. Counsel is reminded pursuant to IV.B. of the court's CM/ECF Policies and Procedures Manual that the court requires 'flattened' versions of fillable documents and forms to be filed. When refiling this docket entry, counsel should flatten the documents. (Collins, S.) (Entered: 10/01/2019) |
| 10/01/2019 | ☉ | NOTICE OF DEFICIENCY regarding 1 Complaint - Payment of the civil filing fee is due upon case initiation. Payments can be made in the form of cash, checks, or credit cards and paid at the clerk's office during regular business hours. Credit card payments can be made over the telephone to the clerk's office during regular business hours. Also, Pay.gov is an additional credit card option that allows the filer to pay filing fee contemporaneously with the case opening in CM/ECF. (See Section V.D(1)(a) of the CM/ECF Policies and Procedures Manual. (Rudd, D.) (Entered: 10/01/2019) |
| 10/01/2019 | ☉ | Notice to Counsel - This case should have been filed in the Western division. The Clerk will enter a reassignment order correcting the error. (Rudd, D.) (Entered: 10/01/2019) |

The problems described above appear rooted in a failure to read or understand the court's CM/ECF Policies and Procedures Manual and the Court's Local Civil Rules, and disrespect for the work of the clerk. There appears a failure to profit from the clerk's work to bring issues to the attorney's attention prompt attention. Many of the issues repeat themselves from case to case. *See also Adlife Marketing & Communications Company, Inc. v. Carlie C's Operation Center, Inc.*, No. 5:19-CV-405-BO (E.D.N.C. Sept. 16, 2019) (issuing deficiency notices concerning failure to pay civil filing fee; failure to identify attachments; issues with proposed summons and civil cover sheet; failure to associate local civil counsel; and failure to file financial disclosure statement have all been brought to counsel's attention, in some instances more than one time and still, it appears, no remedial action on any noticed deficiency has been taken).

This attorney is noticed that he has until October 10, 2019, to cure any and every noticed deficiency in the three cases now assigned to me. If no address is made in accordance with this order, the cases at issue will be dismissed.
Filing mistakes, of course, happen; I've made my share. It generally takes an unusually substantial pattern of errors, though, for a judge to issue an order such as this one.

    b.    From Judge Lewis A. Kaplan's decision Wednesday in <u>*Sands v. Bauer Media Group USA, LLC*</u>:

Digital imaging and the Internet are among the wonders of our age. In combination, they permit the virtually instant and worldwide electronic dissemination of high quality images that can be, and often are, copied and re-disseminated by others. Nonetheless, this circumstance has created problems for professional photographers and publishers of images that were unimaginable in the relatively recent past. It has led also to the creation of a lawyer business model that has deluged this Court with photographic copyright infringement cases since early 2016.

This deluge is attributable to plaintiff's counsel in this case, Richard Liebowitz. According to the Court's records, Mr. Liebowitz, who was admitted to practice in this Court in October 2015, filed 1,110 lawsuits in this Court from the beginning of 2016 through September 16, 2019. That is an average of more than one new case on every day the Court has been open for business. Each and every one of those 1,110 cases has been a copyright infringement suit. Many—probably all or nearly so—have been brought on behalf of photographers who assert that their images have been infringed by Internet web sites and other publishers. This case is part of the downpour.

Of course, photographers who create copyrighted images should be fairly compensated for their work. Those who infringe by using such images in violation of the rights of a copyright holder should be held to account. On the other hand, as I noted in a prior case, "[t]here may well be justification for [the] implication [that a significant portion of the 1,110 cases] ... [have been] strike suits, designed to extort settlements from defendants on the basis that the defense costs would exceed what plaintiff would accept in settlement." {See also, e.g., Pereira v. 3072541 Canada Inc., No. 17-cv-6945 (RA), 2018 WL 5999636, at *3 (S.D.N.Y. Nov. 15, 2018) (describing Mr. Liebowitz's litigation tactics as "an apparent attempt to increase costs and to extort unwarranted settlements").} Indeed, another judge of this Court has referred to Mr. Liebowitz as a "copyright troll"—one who is "more focused on the business of litigation than on selling a product or service or licensing their copyrights to third parties to sell a product or service. A copyright troll plays a numbers game in which it targets hundreds or thousands of defendants seeking quick settlements priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim."

Moreover, Mr. Liebowitz has been sanctioned, reprimanded, and advised to "clean up [his] act" by other judges of this Court. As Judge Furman recently observed, "there is a growing body of law in this District devoted to the question of whether and when to impose sanctions on Mr. Liebowitz." And that is what I am asked to do here by defendant's motion to dismiss the action as a sanction for alleged discovery misconduct or, alternatively, to strike portions of the evidence that plaintiff has submitted in support of a motion for summary judgment or require a bond as security for costs and fees pursuant to Local Civ. R. 54.2.
For more details, which involve a picture of the model, Emily Ratajkowski, walking in lingerie down the streets of New York City in mid-January—and, incidentally, what the court describes as Mr. Leibowitz's failure to comply with discovery obligations—see the opinion, though here's a brief excerpt that offers a sense of the substantive dispute:

Defendant Bauer Media Group USA LLC ... operates the web site FHM.com. FHM.com was among the many media outlets that ran stories about the DKNY video on March 13, 2017, its story being entitled *Emily Ratajkowski's New DKNY Ad Is Just Her Walking A Dog In Lingerie.*

The article was accompanied by a set of photographs that included the two images in which plaintiff claims copyright. The article reported and commented on the release of the DKNY video. It attributed each of the photos on its web page—including the two allegedly infringed Sands images, both of which had appeared on Ms. Ratajkowski's January Instagram posts—to "Instagram/emrata," "emrata" being Ms. Ratajkowski's Instagram handle.
Here's the outcome:

[A]s a sanction for alleged discovery misconduct ...[,] plaintiff's counsel. Mr. Liebowitz, shall pay defendant's reasonable attorney's fees, for making and litigating this motion, and plaintiff shall show cause ... why the Court should not condition plaintiff's ability to proceed with this action on the posting of a bond or other sufficient security in the amount of $50,000 for costs and attorney's fees in this action ....

       C. All I can say is, "Yow." From *Berger v. Imagina Consulting, Inc.*, decided Nov. 1, 2019 by Judge Cathy Seibel:

On April 5, 2019, Defendant filed a letter with the Court requesting a discovery conference. That same day, I granted Defendant's request and scheduled a discovery conference for April 12, 2019 at 11 a.m. I also ordered Plaintiff to respond to Defendant's letter by April 9, which Plaintiff did. On April 12, the Court held the discovery conference, but Plaintiff's counsel, Richard Liebowitz, did not appear and did not call or email the Court or Defendant's counsel to explain his absence. That same day, I ordered Plaintiff to show cause in writing, on or before April 17, 2019, why he failed to appear for the conference and why he should not be required to pay Defendant's attorney's fees for the time expended to appear at the conference. The Court also rescheduled the conference for April 18, 2019.

By letter dated April 15, 2019, Mr. Liebowitz advised that he had missed the conference because of a death in the family which was an "unexpected urgent matter" to which he had to attend. He also said he would be out of the office on April 18 and asked to appear by phone at the rescheduled discovery conference.

The conference was held by phone on April 18. Mr. Liebowitz represented that the death in the family occurred on the morning of April 12 and apologized for not letting Defendant's counsel and the Court know. During the conference, issues were discussed that reflected negatively on Plaintiff's counsel's credibility. For example, Plaintiff had answered interrogatories saying his damages calculation had relied on "contracts, invoices, [and] licensing agreements," but when Defendant requested those documents, Plaintiff said he could not produce them without a protective order. After Defendant agreed to a protective order and the Court signed it, Plaintiff still produced nothing, despite twice promising to do so.

Further, Defendant's counsel represented that Mr. Liebowitz had told Defendant's counsel that he could not comply because he was out of the country due to an emergency, when in reality he was at a trade show in Europe trying to drumup business.

At that point, concerned about Mr. Liebowitz's credibility and the possibility that he was trying to increase costs for Defendant's counsel, I determined that I could not merely accept Mr. Liebowitz's representation that he missed the April 12 conference because of a death in the family, and directed that, among other things, by May 1, Mr. Liebowitz provide evidence or documentation regarding who died, when, and how he was notified. I also permitted Defendant's counsel to submit his billing records relating to the discovery dispute by May 1, with Mr. Liebowitz having until May 15 to submit opposition to Defendant's application that Plaintiff cover thosefees. {I also expressed concern over how Plaintiff's claim of $5000 in damages could possibly have been made in good faith.} By letter dated May 1, 2019, Mr. Liebowitz represented that his grandfather had unexpectedly died on April 12, 2019 and that Mr. Liebowitz was needed to assist with certain customs for which arrangements had to be made in advance of the Sabbath. That same day, I endorsed the letter as follows:

"This letter is not responsive to my instruction. Mr. Liebowitz was to *document* who passed away, when the person passed away and when Mr. Liebowitz was notified. The reason I requested documentation is that there is reason to believe Mr. Liebowitz is not being candid. So a letter from him does not advance the ball. When someone dies, there is documentation including a death certificate and (almost always) an obituary, and nowadays one's phone usually contains evidence of what one was told and when. Mr. Liebowitz may have until 5/3/19 to supplement this letter."

On May 3, 2019, Plaintiff filed a notice of settlement. On May 7, 2019, I advised as follows:

"I'm glad the parties have resolved the case (and, I presume, the issue of Plaintiff's counsel's expenses for the April 12 conference), but there remains one open issue: Mr. Liebowitz's failure to document the death in the family that he says caused him to miss the conference. He was supposed to address that issue by May 3, but I will give him until May 9. Even if Defendant has been made whole, I still need to satisfy myself that there is no need for disciplinary or other inquiry."

On May 9, Mr. Liebowitz filed a Declaration in which he "re-certif[ied]" that the statements in his April 15 and May 1 letters were true, and he stated that he believed that his Declaration discharged his obligation to the Court.

On May 13, I responded that Mr. Liebowitz's May 9 Declaration did not resolve the matter because, given the issues surrounding Mr. Liebowitz's credibility and his failure to provide any information or documentation regarding his grandfather's death, Mr. Liebowitz's reiteration could not sufficiently discharge his obligations to the Court. I therefore issued an order to show cause, requiring Mr. Liebowitz to provide documentation or other evidence (apart from his own word) that demonstrated that a death in the family had occurred that prevented him from attending the April 12 conference and timely notifying the Court and Defendant's counsel of his inability to attend.

Rather than comply with the Court's order to provide the above documentation, on May 16, Mr. Liebowitz again submitted a Declaration reiterating his belief that his statements contained in the April 15, May 1, and May 9 letters were sufficient to discharge his obligations in response to the Court's order to show cause.

On July 26, I ordered Mr. Liebowitz, under pain of contempt, to provide a copy of his grandfather's death certificate so as to support his claim that he could not attend the April 12 conference, nor provide timely notice to the Court or opposing counsel, as a result of his grandfather's death. In response, Mr. Liebowitz submitted another Declaration on August 12, stating that he believed that his previous letters sufficed to fulfill his obligations to the Court (in spite of the fact that I explicitly requested documentation other than "his say-so," and that he should not be required to submit his grandfather's death certificate because it is "a personal matter."

As I noted in my August 19 response to Mr. Liebowitz's letter, however, although the death of a family member is certainly a personal matter, questions regarding Mr. Liebowitz's candor before the Court are professional in nature. I reassured Mr. Liebowitz that, if he

was concerned about the death certificate being available on the public docket, he was welcome to provide the document directly to my chambers to ensure his privacy. I also made clear that, should he fail to provide the requested documentation by August 26, he would be held in contempt of court and subject to sanctions, including monetary sanctions and/or referral to this Court's Grievance Committee.

On August 26, the day Mr. Liebowitz was required to provide his grandfather's death certificate pursuant to my August 19 order, Mr. Liebowitz instead submitted another Declaration. In this Declaration, Mr. Liebowitz argued that he was not in contempt because this Court's request for his grandfather's death certificate was unlawful, as it "likely constitutes a usurpation of judicial authority or a breach of judicial decorum"; his previous Declarations complied with my previous orders; "there [was] no basis to impose monetary sanctions"; and the Court's assurance that his grandfather's death certificate would not be made public was insufficient to protect his right to privacy.

On September 27, I endorsed Mr. Liebowitz's latest Declaration, stating that:

"There is nothing unlawful about my August 19, 2019 order. There was also nothing unclear about it. Likewise, Mr. Liebowitz's failure to comply is apparent beyond any reasonable doubt. Finally, he has not diligently attempted to comply. To the contrary, while maintaining that the death occurred (and thus implicitly conceding the existence of a death certificate), he has repeatedly refused to provide it, even after the Court made clear that his "good faith declarations" were insufficient and after the Court agreed that the document need not be publicly filed. He has not shown or even alleged an inability to comply."

I therefore declared Mr. Liebowitz to be in contempt of court, and ordered that, should he fail to comply with my order and provide the requested documentation by October 2, he would be subject to monetary sanctions of $100 each business day until he complied. I also informed Mr. Liebowitz that, "[s]hould this sanction prove insufficient" to ensure his compliance, "additional or different sanctions [would] be considered."

On October 2, Mr. Liebowitz wrote a letter to my chambers requesting an in-person conference to discuss my September 27 order, and also requesting a stay of that order "[f]or just cause" until the conference could be held. I denied his request, noting that Mr. Liebowitz's letter had not stated what purpose would be served by an in-person conference, nor had it supplied any justification for a stay of my September 27 order. Mr. Liebowitz submitted another letter the next day, October 3, reiterating his request for an in-person conference to discuss his grandfather's death certificate and for a stay "[f]or just cause." I again denied the application, because Mr. Liebowitz had not articulated any purpose that the conference would serve, nor did he supply any cause to stay my September 27 order.

I further ordered Mr. Liebowitz to refrain from filing any further requests for a conference unless he could explain specifically what purpose would be served by the conference and to refrain from filing any further requests for a stay of my September 27 order unless he could specifically state a justification for a stay. I notified Mr. Liebowitz that his first payment under the contempt sanction was due to the Clerk of the Court on Monday, October 7.

On October 7, Mr. Liebowitz sent a letter requesting a two-week extension to deliver his grandfather's death certificate and requesting that the monetary sanctions be stayed until after the extension had elapsed. This request had come at 8:34 p.m. on October 7, well after the Clerk's Office had closed. That same night, I denied Mr. Liebowitz's request for an extension. As of November 1, 2019, Mr. Liebowitz has not made any of his required payments. By the Court's count, Mr. Liebowitz was obligated to pay $300 on October 7, 2019; $400 on October 15, 2019; $400 on October 21, 2019; and $500 on October 28. { I will not count Yom Kippur, which fell October 9, 2019, as a business day[, and] Monday, October 14, was a national holiday.}

Richard Liebowitz, Plaintiff's counsel in this case, is now in contempt of my August 19, 2019 and September 27, 2019 orders. The $100 fine he accrues each business day has plainly been ineffective to coerce compliance with the August 19, 2019 Order.

Accordingly, the daily contempt sanction is hereby increased to $500 a day, effective November 6, 2019. Starting on that date, Mr. Liebowitz will be sanctioned $500 per business day (payable on Monday of each week, or Tuesday if the office of the Clerk of Court is not open on Monday) until he has complied in full with my August 19, 2019 and September 27, 2019 Orders.

Further, Mr. Liebowitz is hereby ORDERED to appear before this Court in person on November 13, 2019 at 10 a.m., and there and then SHOW CAUSE why he should not be incarcerated until such time as he complies with the above-described orders (and, if applicable, the instant order).

Failure to appear as directed will subject Mr. Liebowitz to arrest by the United States Marshals Service without further notice.

    D. From *McDermott v. Monday Monday, LLC*, written by District Judge Denise Cote, issued last Fall, though I just came across it while researching a related copyright case:

On February 22, 2018, this Court denied the defendant's motion for attorney's fees in this case. *McDermott v. Monday Monday* (S.D.N.Y. Feb. 22, 2018) ("February 22 Opinion"). Over a month later, plaintiff's counsel filed a motion pursuant to Fed. R. Civ. P. 60 objecting to the use of the term "copyright troll" in the February 22 Opinion to describe plaintiff's counsel. He requests that the term be "redacted" from the February 22 Opinion. The request is denied....

Plaintiff's counsel, Richard Liebowitz, has filed over 700 cases in this district since 2016 asserting claims of copyright [infringement]. The instant action was among their number. In this action, the plaintiff sued an Idaho limited liability company based on the assertion that it had displayed the plaintiff's copyrighted photograph on its website. The defendant was served on November 30. Despite his obligation to do so, Mr. Liebowitz did not file on ECF either an affidavit reflecting service of the complaint or proof that he had served the initial pretrial conference notice on the defendant.

Moreover, despite the assertion in the complaint that the defendant "transacts business in New York," it appears that the defendant does not do so. On January 17, the defendant moved to dismiss for lack of personal jurisdiction. Before opposition to the motion was due, the plaintiff voluntarily dismissed his suit. That same day, the defendant sought attorney's fees and costs. In his opposition to the motion for attorney's fees and costs, Mr. Liebowitz did not suggest that he had any non-frivolous reason to believe that there was personal jurisdiction over the defendant in this district. For the reasons described in the February 22 Opinion, the Court in an exercise of its discretion denied the defendant's motion and declined to award fees against Mr. Liebowitz "on this occasion." The February 22 Opinion warned that should Mr. Liebowitz file any other action in this district against a defendant over whom there is no non-frivolous basis to find that there is personal jurisdiction, "the outcome may be different."

Despite the exercise of restraint in declining to impose sanctions against Mr. Liebowitz, Mr. Liebowitz has brought this motion. He objects to the description in the February 22 Opinion of Mr. Liebowitz as a known copyright troll, and requests that the February 22 Opinion with that term "redacted." ...

Even if it were appropriate to consider this request for a "redaction" under Rule 60, Mr. Liebowitz has failed to explain what the refiling of the February 22 Opinion with a redaction would accomplish. He has also failed to demonstrate that any modification to or redaction of the February 22 Opinion is warranted. His litigation strategy in this district fits squarely within the definition of a copyright troll.

The February 22 Opinion defined a copyright troll as follows:

"In common parlance, copyright trolls are more focused on the business of litigation than on selling a product or service or licensing their copyrights to third parties to sell a product or service. A copyright troll plays a numbers game in which it targets hundreds or thousands of defendants seeking quick settlements priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim."

In the over 700 cases Mr. Liebowitz has filed since 2016, over 500 of those have been voluntarily dismissed, settled, or otherwise disposed of before any merits-based litigation. In most cases, the cases are closed within three months of the complaint filing. In some instances, cases were dismissed because Mr. Liebowitz failed to prosecute his clients' claims. *See, e.g., Vincheski v. University of Minnesota et al.*, 16cv4590 (KBF), ECF No. 19 (S.D.N.Y. Sept. 9, 2016) (terminating the action after plaintiff failed to amend her complaint pursuant to a court order directing plaintiff to amend her complaint due to deficiencies in the dismissed original complaint). In other cases, judges have noted Mr. Liebowitz's unorthodox litigation practices. *See, e.g., Cuffaro v. Nylon Media, Inc.*, 18cv1391 (GHW), ECF No. 11 (S.D.N.Y. Apr. 11, 2018) (noting that plaintiff, in a sworn affidavit in support of a default judgment, misstated key dates and urging "counsel for plaintiff to use greater caution and to avoid such clear errors when making submissions to the Court"); *Kmonicek v. Daily Burn, Inc.*, 17cv497 (KPF), ECF No. 23 (S.D.N.Y. June 15, 2017) ("The Court is surprised to have received the above request [for an extension to file a stipulation of dismissal], which was not at all foreshadowed during yesterday's telephone conference. And the Court is hesitant to grant the parties' *third* extension request in order to accommodate what appear to be ministerial concerns not touching on the substance of the parties' settlement.") (emphasis in original) (each extension in the case was requested by Mr. Liebowitz).

A number of Mr. Liebowitz's cases have been dismissed from the bench as frivolous. *See, e.g., Cruz v. Am. Broad. Cos.*, 17cv8794 (LAK), 2017 WL 5665657, at n.11 (S.D.N.Y. Nov. 17, 2017) (Judge Kaplan noted that he "awarded over $121,000 in attorney's fees against a client of Mr. Liebowitz in three other, related copyright infringement cases that were dismissed from the bench.) (citing *Kanongataa v. Am. Broad. Cos.*, 16cv7392 (LAK), 2017 WL 4776981, at (S.D.N.Y. Oct. 4, 2017) ). Multiple courts, on their own initiative, have ordered Mr. Liebowitz to show cause why he should not be required to post security for costs as a condition of proceeding further with an action. *See, e.g., Pereira v. Kendall Jenner, Inc.*, 17cv6945 (RA), ECF No. 24 (S.D.N.Y. Jan. 4, 2018) (Mr. Liebowitz voluntarily dismissed the case before responding to Judge Abrams's Show Cause Order.); *Cruz v. Am. Broad. Cos.*, 17cv8794 (LAK), 2017 WL 5665657, (S.D.N.Y. Nov. 17, 2017) (Mr. Liebowitz informed the court that the parties had settled the case before responding to Judge Kaplan's Show Cause Order.); *Leibowitz v. Galore Media, Inc.*, 18cv2626 (RA) (HBP), 2018 WL 4519208 (S.D.N.Y. Sept. 20, 2018) (denying motion for reconsideration of order to post security for costs); *see also Tabak v. Idle Media*, Inc., 17cv8285 (AT), ECF No. 5 (S.D.N.Y. Oct. 31, 2017) (Judge Torres ordered Mr. Liebowitz to show cause why the action should not be transferred. Mr. Liebowitz voluntarily dismissed the case before responding to the Order to Show Cause.); *Reynolds v.*

*Intermarkets, Inc.*, 17cv8795 (AT), ECF No. 4 (S.D.N.Y. Nov. 14, 2017) (same). Mr. Liebowitz has been admonished for repeating arguments that "have no basis in law." *Terry v. Masterpiece Advertising Design*, 17cv8240 (NRB), 2018 WL 3104091 at (S.D.N.Y. June 21, 2018). Mr. Liebowitz has also been sanctioned for failing to comply with court orders and for failing to produce materials during discovery. *Romanowicz v. Alister & Paine, Inc.*, 17cv8937 (PAE) (KHP), ECF No. 24 (S.D.N.Y. June 22, 2018) (ordering Mr. Liebowitz to pay $200 to the Clerk of Court as a consequence of his failure to comply with an Order directing him to file an affidavit of service of a Default Judgment); *Ferdman v. CBS Interactive, Inc.*, 17cv1317 (PGG), 2018 WL 4572241 (S.D.N.Y. Sept. 21, 2018) (discovery sanctions). Mr. Liebowitz has filed nearly 200 cases in this district in 2018 alone, often times filing multiple cases on the same day.

Nevertheless, Mr. Liebowitz argues that his conduct does not comport with the definition of term "copyright troll" because copyright trolls engage in a narrower type of behavior: specifically, multi-defendant John Doe litigation brought by the copyright holders of pornographic material. This argument is unavailing.

First, simply because the term is also invoked in another type of case does not preclude its application here. Second, the article that Mr. Liebowitz cites for the proposition that the term applies to enforcers of copyrights in pornography explains that such practices are just "a particular *kind* of copyright trolling." Matthew Sag, *Copyright Trolling, An Empirical Study*, 100 Iowa L. Rev. 1105, 1108 (2015) (emphasis added). The article, and courts that cite it, define the "essence of trolling" as something broader: "seeking quick settlements priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim." *Id.*; *see also Creazioni Artistiche Musicali, S.r.l. v. Carlin America, Inc.*, 14cv9270 (RJS), 2017 WL 3393850, at (S.D.N.Y. Aug. 4, 2017). As evidenced by the astonishing volume of filings coupled with an astonishing rate of voluntary dismissals and quick settlements in Mr. Liebowitz's cases in this district, it is undisputable that Mr. Liebowitz is a copyright troll.

This Court has generally shown Mr. Liebowitz leniency, despite his questionable tactics. In this case, the Court declined twice to award the defendant attorney's fees. In another, the Court imposed a bond on Mr. Liebowitz's client in an amount that was less than a tenth of the request made by the defendant. *See Reynolds v. Hearst*, 17cv6720 (DLC), 2018 WL 1229840 (S.D.N.Y. Mar. 5, 2018). In yet another, the Court modified sanctions imposed on Mr. Liebowitz to "more directly address the deficiencies in [his] performance … and deter their repetition." *Steeger v. JMS Cleaning Services, LLC*, 17cv8013 (DLC), 2018 WL 1363497, at (S.D.N.Y. Mar. 15, 2018).

In this case, the February 22 Opinion used an apt term to describe Mr. Liebowitz's copyright litigation practice. He has not shown that doing so has burdened him with any undue and extreme hardship. Press coverage that accurately summarizes the status and outcomes of Mr. Liebowitz's cases in this District does not present an undue and extreme hardship….
You can read Mr. Liebowitz's side of the story <u>in his motion</u>; here's an excerpt from the Introduction:

Liebowitz Law Firm, PLLC has filed more than 600 Cases in SDNY and EDNY since January 2016. But the firm also represents over 350 clients, thousands of copyright registrations, and tens of thousands of copyrighted works. The number of lawsuits filed by the firm primarily shows that: (a) violation of the Copyright Act via unauthorized use of photographic materials is an epidemic; (b) the Liebowitz Law Firm is vindicating the public interest by ensuring that a proper licensing market exists for the work of photographers; and (c) individual photographers are retaining Liebowitz Law Firm to file federal lawsuits because there is no other means for them to enforce their rights, particularly given the Congressional failure to establish a Copyright Court to help streamline these types of claims.

In response to Liebowitz Law Firm's good faith efforts to enforce the Copyright Act on behalf of individual working-class photographers, the District Court has labeled Richard Liebowitz, the firm's principal and founder, a "copyright troll." The term "troll," when applied to an actual human being, is never used as a compliment. It is meant to defame, degrade, and stereotype a person as a villain. It is intended to invoke wide-ranging negative connotations that suggest harassment, abusive practices, depraved motivations and even illegality. Once a person labels another as a "troll," certain truths become self-evident, the most obvious being that any actions taken by the so-called "troll" will be perceived through the lens of that negative stereotype, and any judgments rendered will inevitably function to confirm that hostile perception.

On February 22, 2018, the District Court entered an order in which it became the first and only court to *sua sponte* label Plaintiff's counsel, Richard P. Liebowitz, a "copyright 'troll.'" *See McDermott v. Monday Monday, LLC*, No. 17CV9230 (DLC), 2018 WL 1033240, at *3 (S.D.N.Y. Feb. 22, 2018) ("Plaintiff's counsel, Richard Liebowitz, is a known copyright 'troll,' filing over 500 cases in this district alone in the past twenty-four months.") On its face, the Court affixed this derogatory label to Mr. Liebowitz for no other reason than the number of cases his law firm has filed during the last two years. The District Court did not explain why it was "known" that Mr. Liebowitz was a "troll," or where the Court obtained such knowledge. Despite filing over 600 cases in two years, no other judicial officer in any case in any district had ever stereotyped Mr. Liebowitz or his firm as a "troll". Then, less than a week later, on February 28, 2018, the District Court invoked the "troll" label again to describe Mr. Liebowitz. This time, it was to impose a punitive monetary sanction of $10,000 against the attorney. *See Steeger v. JMS Cleaning Servs. LLC*, No. 17CV8013(DLC), 2018 WL 1136113, at *1 (S.D.N.Y. Feb. 28, 2018) (beginning its decision: "Paul Steeger filed this copyright action. He is represented by Richard Liebowitz, who has been labelled a copyright "troll."") Significantly, the District Court did not expressly state in *Steeger* that the "troll" label, as applied to Mr. Liebowitz, was originated by the District Court itself. Finally, on March 5, 2018, the District Court

once again invoked the negative stereotype, gratuitously labeling Mr. Liebowitz a "copyright troll" for no other reason than to justify an adverse ruling against his client-photographer Ray Reynolds. *See Reynolds v. Hearst Communications, Inc.*, No. 17CV6720(DLC), 2018 WL 1229840, at *4 (S.D.N.Y. Mar. 5, 2018) ("Mr. Liebowitz has filed over 500 cases in this district in the past twenty-four months. He has been labelled a copyright 'troll'").

In less than two weeks, the District Court issued three adverse rulings which unjustifiably characterized Mr. Liebowitz as a "copyright troll." The District Court could have issued the same decisions without invoking such a broad-sweeping, defamatory stereotype. As grounds for redaction, Liebowitz respectfully submits that the District Court erred by using that term to describe Mr. Liebowitz and, by extension, his law firm and its 350+ clients. Because the term "copyright troll" has been ostensibly used by the Court as a legal term of art, the Court's usage may be appropriately challenged as a mistake of law under Rule 60(b)(1). In the alternative, if the term "copyright troll" is not a legal term of art, but has merely been invoked to disparage and defame Liebowitz Law Firm for representing a large number of working-class photographers, then the District Court should redact such invective under Rule 60(b)(6) as it works "an extreme and undue hardship" on Leibowitz's ability to enforce the Copyright Act in furtherance of the public interest.

Accordingly, because the District Court's use of the term "troll" is a plainly erroneous mistake-of-law and highly prejudicial to Liebowitz Law Form and the Authors it represents, the Court's order should be amended to redact the term "copyright troll" from the decision.

### 3. Conclusion

This frivolous case should be immediately dismissed after reviewing the numerous indiscretions fallowed out by Mr. Liebowitz. Any costs associated to the defense against Mr. Mondragon's false claims be paid to the defendant upon judgement.

Date: 12-09-2019                Printed Name of Defendant: Kasey King

                                Signature of Defendant : *[signature]*

# Exhibit H

