1

1          IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF COLORADO
2
    Case No. 19-cv-01437-CMA-NRN
3   _____

4   LANDON MONDRAGON,

5        Plaintiff,

6   vs.

7   NOSRAK, LLC and KASEY KING,

8        Defendants.
    _____
9

10           Proceedings before N. REID NEUREITER, United

11  States Magistrate Judge, United States District Court for

12  the District of Colorado, commencing at 11:02 a.m., May 7,

13  2020, in the United States Courthouse, Denver, Colorado.

14  _____

15           WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

16  ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

17  _____

18                        APPEARANCES

19           RICHARD LIEBOWITZ, Attorney at Law, appearing for

20  the Plaintiff.

21           THOMAS WERGE, Attorney at Law, appearing for the

22  Defendants.

23  _____

24           TELEPHONIC MOTION HEARING/SHOW CAUSE HEARING

25

```
 1              P R O C E E D I N G S

 2              (Whereupon, the within electronically recorded

 3    proceedings are herein transcribed, pursuant to order of

 4    counsel.)

 5              THE COURT:  We're on the record in 19-cv-01437,

 6    Mondragon vs. Nosrak, LLC.  Appearances for the plaintiff?

 7              MR. LIEBOWITZ:  Yes, and good morning, Your Honor.

 8              Richard Liebowitz of Liebowitz Law Firm on behalf

 9    of the plaintiff.  Good morning.

10              THE COURT:  Good morning.  And for the defendant?

11    Defendant?

12              MR. WERGE:  Good morning, Your Honor.  Thomas

13    Werge on behalf of defendants Kasey King and Nosrak, LLC.

14    And also attending on the phone as well is my law clerk,

15    Travis Miller, who is a rising (inaudible) at CU Boulder.

16              MR. MILLER:  Good morning, Judge.

17              THE COURT:  Thank you.  Okay, so we have a couple

18    of things to address.

19              First is the motion to dismiss claim against

20    defendant Kasey King, pursuant to Rule 12(b)(6), that's

21    Docket Number 36.

22              So I read the motion, I read the opposition.  Mr.

23    Werge, it seems to me that the allegation in the complaint,

24    the amended complaint, that Mr. King was involved in placing

25    the -- I can't remember the exact words but it's to the
```

 1   effect that King and Nosrak put up the images.  It doesn't

 2   need to say more than that.  That strikes me as sufficient

 3   to make Mr. King, at least for the purposes of notice

 4   pleading and even under Iqbal and Twombly enough to justify

 5   a claim against Mr. King.  And I do recall his -- from his

 6   presence here at one of our initial -- one of our initial

 7   proceedings before you got involved, he acknowledged that,

 8   you know, on behalf of Nosrak, he put up the images on the

 9   -- or he was involved at least in putting them up.  So I

10   think that's enough to get past a motion to dismiss.

11            What's your position on that?

12            MR. WERGE:  Judge, what -- I think what's

13   important is the specific language and what was done to add

14   him to the complaint.  The -- remember the original

15   complaint was made against only the entity, and I believe

16   Mr. Liebowitz has been forthcoming that the reason he added

17   him was because there was the filing of a -- or of a

18   dissolution of the LLC with the Colorado Secretary of State.

19            Now, that is not in the amended complaint.  There

20   are no allegations related to the dissolution of the LLC in

21   the amended complaint.  And, of course, motions to dismiss

22   are supposed to be evaluated on the four corners of the

23   complaint themselves.

24            Essentially -- not essentially.  Exactly what

25   plaintiff did here was simply added another party and did

4

1  not add any specific allegations related to that party, but

2  simply lumped them in as defendants here.  There -- there is

3  no specific allegation that Mr. King participated in any

4  way.  And if there were representations made to the Court, I

5  would not be privy to those at this time.  However, they're

6  not within the four corners of the complaint, which is how

7  this is supposed to be evaluated.

8         This is simply, exactly what Twombly and Iqbal

9  prevent, which is formulaic recitation of legal conclusions

10 where you basically added someone without any facts -- any

11 plausible facts to support a claim to a complaint.  And we

12 think on that basis alone that Mr. King should be dismissed.

13 And I think it would be appropriate to dismiss without

14 prejudice, Your Honor.

15         THE COURT:  So, but then -- then where does that

16 get us?  Then -- then -- I mean, Nosrak doesn't exist

17 anymore, so Mr. Liebowitz is just going to amend to add him

18 and throw in a couple of additional sentences about how

19 Nosrak was a creation of Mr. King and his girlfriend and

20 they wanted to sell hats.  And to sell hats, they got a

21 model and the model sent them the pictures and Mr. King

22 and/or his girlfriend put up the pictures and then we've got

23 enough.

24         I mean, aren't we just adding more steps

25 unnecessarily?

1         MR. WERGE:  No, Your Honor.  Specifically, because

2    the entire premise -- and since you're talking about the

3    dissolution of Nosrak, Nosrak has been reinstated as of

4    March.  So Nosrak exists and is a continuing, ongoing

5    entity.  And, you know, not withstanding that, there was no

6    allegation that Nosrak was dissolved in the amended

7    complaint, and I'm not sure what that allegation supporting

8    it now would be, that it was dissolved and now it's

9    reinstated and so, therefore, Mr. King did something wrong?

10         That's a huge jump in logic and I would say defies

11   the plausibility standard of the minimum required by

12   plaintiff here.

13         THE COURT:  Okay, I hear your argument.

14         Mr. Liebowitz?

15         MR. LIEBOWITZ:  Yeah, Your Honor.

16         So the amended complaint, you know, clearly states

17   defendants, with an S, which corresponds to both Nosrak and

18   Kasey King, you know, ran the photographs on the website to

19   promote their brand.  I mean, you know, it could --

20         THE COURT:  How do you know that Mr. -- how do you

21   know that Mr. King posted the photographs personally, as

22   opposed to -- my recollection, as vague as it is, was that

23   it was actually his girlfriend's Instagram feed that was

24   used and Nosrak is his girlfriend's first name spelled

25   backwards.  Maybe it was the girlfriend.  How do you know?

6

         1          MR. LIEBOWITZ:  Yeah, well -- but we've had this

         2   discussion at the -- at the initial conference and, Your

         3   Honor, I -- and, you know, you stated earlier that, you

         4   know, I believe this came up that he was the one who posted

         5   them.  And it's just -- basically at the end of the day,

         6   he's blaming the model for giving him the photographs.  But,

         7   you know, this is like a -- sort of like, you know, what

         8   they call like a shell game type of situation where, you

         9   know, this is a case where Kasey King, the owner of Nosrak,

        10   he gets a lawsuit.  He then tries to get out of the lawsuit

        11   by dissolving his company, mailing the dissolution papers to

        12   me.  And, basically, you know, saying, Oh, you know, the

        13   case is closed.  Nosrak is closed and it's dissolved.

        14          Then we amend the complaint to add in Kasey King

        15   as the plaintiff.  And then he comes into court and then

        16   reopens Nosrak again mysteriously.

        17          You know, this is clearly, you know, from my

        18   interpretation, a game of where is the money.  You know, if

        19   this ends up being a judgment, you know, against Nosrak and

        20   next thing you know, you look in the bank account and it's 2

        21   cents, you know, as opposed to Kasey King in his personal

        22   account.  That's what this is all about, you know.

        23          THE COURT:  I remember Mr. King -- now remember

        24   what Mr. King does for a living.  He's an automobile

        25   mechanic.  There's no --

1           MR. LIEBOWITZ:  Well, I understand --

2           THE COURT:  -- pot of gold at the end of this

3     rainbow, Mr. Liebowitz.

4           MR. LIEBOWITZ:  Okay.  That -- that I -- that I

5     totally understand.  But this is a case that, you know, Mr.

6     Werge, you know, is -- and, you know, Kasey King are, you

7     know, trying to get, you know, Kasey King out of it, you

8     know, by, you know, if, you know, Nosrak ends up becoming

9     liable, you know.  And then at the end of the day, you know,

10    we're litigating this a year and Mr. Werge comes back to me

11    a year from now and says, Okay, you know, Nosrak has no

12    money in the bank account, you know, and that's it.  And

13    then we're litigating for nothing.

14          And I think this is a game.  I think this is

15    clearly a game.  I would like to, you know, depose Kasey

16    King and find out, you know, based off of the initial

17    conference, when he said he posted them.

18          So, you know, I will get that on the record that,

19    you know -- and his testimony saying that he is the one who

20    posted them.  You know, that is, you know, at least at this

21    stage of the litigation, you know, plausible and that's what

22    we, you know, put in the amended complaint.  So I definitely

23    don't think that he should be, you know, dismissed at this

24    juncture.

25          We'll take depositions, you know, and, you know,

8

1    we'll see who's actually telling the truth at the

2    depositions because, obviously, this mixing, you know,

3    testimony right now because at the conference he said he

4    posted it and now, you know, opposing counsel says he

5    didn't.  I mean, it's all these things are just not adding

6    up now.

7            So I just don't think that at this stage it's

8    right to dismiss Kasey King.

9            THE COURT:  Okay.  Docket Number 36 is submitted

10   and I will take that under advisement.

11           The next issue is Docket Number 37, motion for

12   leave to assert claims against third-party defendant Jessica

13   Moore by defendants Kasey King.  That one I read.

14           It seems reasonable to allow that because if there

15   is liability here, there might be a claim over against the

16   model.

17           I was a little bit concerned about -- oh, and --

18   about federal jurisdiction for this claim.  Mr. Werge, can

19   you talk to me about that?  I mean, she's -- there's clearly

20   no diversity there.  I know this -- the original claim

21   arises under the copyright laws.  But does a third-party

22   claim for, essentially, indemnity for liability under the

23   copyright laws, if -- does that -- does federal jurisdiction

24   extend to a new third-party claim like that?

25           MR. WERGE:  Your Honor, I have not specifically

1   researched that issue.  However, that would not change the

2   nexus of the claim still being based in the federal

3   question.  And I do not think that there could be -- you

4   know, I think it would be still appropriate to bring her in

5   since this all -- the nexus of it is the copyright claim and

6   holding her responsible for the copyright claim.

7         I mean, it is -- it is a bit -- the question has

8   to be:  Why has plaintiff not sued Ms. Moore here?  Because

9   -- and that's basically what needs to be done, that she's

10   brought in and at that point plaintiff could assert his

11   claim directly against her, as well.

12         But I think, regardless of whether it is a, you

13   know, contribution or -- and/or that she's responsible for

14   it, the nexus is still based in the federal question of

15   copyright law.

16         And, Your Honor, I would like to -- if the Court

17   is inclined to grant this motion, what I would like to do is

18   file a new third-party complaint that makes that information

19   more clear and clarifies the basis for federal jurisdiction.

20         THE COURT:  Okay.  Mr. Liebowitz, you didn't file

21   an opposition to this motion for leave to assert claims

22   against Jessica Moore.  Do you have any objection to that?

23         MR. LIEBOWITZ:  Yeah.  I mean, we have no, you

24   know, opposition to that.

25         THE COURT:  Okay.  So I'll grant the --

10

1           MR. LIEBOWITZ:  You know, if --

2           THE COURT:  I will grant the motion for leave to

3   assert claims against third-party defendant Jessica Moore.

4           Mr. Werge, do you want to file an amended -- I

5   mean, the reality is, is if Mr. Liebowitz isn't objecting to

6   federal jurisdiction, I don't know -- when do you think

7   you'd be able to amend your proposed third-party claims?

8           MR. WERGE:  I'd like to file our actual -- since

9   the one we provided was a proposed third-party amended -- or

10  third-party complaint, we would just like to submit our

11  actual third-party complaint no later than seven days from

12  today, Your Honor.

13          THE COURT:  Okay.  So that motion will be granted

14  and you shall submit your third-party complaint by the 14th,

15  with the understanding that it may be a little bit more

16  elaborate than the one you submitted a proposed -- as a

17  proposed amended -- or a proposed third-party complaint.

18          Okay?

19          MR. WERGE:  Thank you, Your Honor.

20          THE COURT:  So the next matter is Docket Number

21  42, a motion to dismiss for lack of prosecution because of

22  failures by Mr. Liebowitz to do what had been specifically

23  agreed and directed at the scheduling conference.

24          And then subsequently, when I ordered Mr.

25  Liebowitz to submit the scheduling order, which he failed to

1    do, he didn't submit the scheduling order consistent with

2    the scheduling conference that we'd had and spent half an

3    hour on deciding on limits and dates.  Instead, he submitted

4    a different scheduling order, while it was saying this is an

5    original one which was skeletal and included no detail,

6    included none of the limits that we described and changed

7    all the dates.

8            And so, first of all, I'd like Mr. Liebowitz:  How

9    did that happen?  Did you not recall that we had had an

10   actual scheduling conference where you specifically agreed

11   that you would do your Rule 26 disclosures by a specific

12   date and you would submit a revised scheduling order, as I

13   directed?

14           What happened?

15           MR. LIEBOWITZ:  You know, Your Honor, I think,

16   frankly, that was just a -- you know, a mistake.  You know,

17   I just forgot and that's probably the only logical

18   conclusion, you know --

19           THE COURT:  Well, I -- no.  I don't want -- I

20   don't want a logical conclusion.  I want to know how you --

21   are you taking notes during this conference?  Were you

22   taking notes during the scheduling conference?  How -- how

23   do you operate?

24           MR. LIEBOWITZ:  I -- yeah.  You know, it was -- it

25   was, you know -- I -- you know, when I submitted that new

1   plan, I didn't have the dates.

2         THE COURT:  Did you see the minute order that was

3   issued the same date of the scheduling conference that

4   included all the dates?

5         MR. LIEBOWITZ:  No.

6         THE COURT:  Do you look at the minute orders that

7   are issued by this Court?

8         MR. LIEBOWITZ:  You know, listen, Your Honor,

9   it -- it was a mistake.  You know, I take full

10  responsibility for that.  You know, I, you know, won't do it

11  again.  And it was an error, you know.  I mean --

12        THE COURT:  No.  Mr. Liebowitz --

13        MR. LIEBOWITZ:  -- I, you know --

14        THE COURT:  Stop for a second, Mr. Liebowitz.  I'm

15  going to actually ask some detailed questions about your

16  practice and I'm going to ask you to answer those questions

17  under oath.  So I'm going to ask my courtroom deputy to put

18  you under oath, please.

19        Ms. Libid.

20        MS. LIBID:  Yes, Your Honor.

21              RICHARD LIEBOWITZ,

22  having been previously duly sworn, was examined and answered

23  questions as follows:

24        MS. LIBID:  Please state your name and spell your

25  first and last name.

1          MR. LIEBOWITZ:  Yeah, sure.  Richard Liebowitz.

2    R-I-C-H-A-R-D.  Liebowitz, L-I-E-B-O-W-I-T-Z.

3          THE COURT:  Okay.  Mr. Liebowitz, who do you have

4    keeping track of your cases in your office?

5          MR. LIEBOWITZ:  I have a paralegal.

6          THE COURT:  How many people work for you in your

7    office?

8          MR. LIEBOWITZ:  I have about 15 people.

9          THE COURT:  And how many of those people are

10   lawyers?

11         MR. LIEBOWITZ:  I only have two other associates.

12         THE COURT:  Okay.  So what do the other people do,

13   the other 15 people who are not lawyers?

14         MR. LIEBOWITZ:  Yeah, they're researchers in my

15   office.

16         THE COURT:  Okay.  You have one paralegal --

17         MR. LIEBOWITZ:  Researchers and then I -- yeah, I

18   have one paralegal.  And I have a couple of people that do

19   copyright registrations and I have an office manager and

20   then the rest are researchers.

21         THE COURT:  Okay.  And who keeps track of dates?

22         MR. LIEBOWITZ:  I do myself.

23         THE COURT:  How many cases do you have pending

24   across the country at this time?

25         MR. LIEBOWITZ:  I would -- I don't have the exact

14

1    number.

2            THE COURT:  Give me a ballpark.  100?  200?  300?

3    500?  600?

4            MR. LIEBOWITZ:  Oh, pending?  I, you know, would

5    say it's safe to say that it's north of 100.

6            THE COURT:  How many pending in the Southern

7    District of New York?

8            MR. LIEBOWITZ:  Pending?  You know, it's

9    definitely, you know, more than 50.

10           THE COURT:  More than 50 in the Southern District.

11   What other states do you have more than 10 cases pending in?

12           MR. LIEBOWITZ:  I have (inaudible) in Texas.  I

13   have in -- let's see.  Oh, Colorado.  Pending?

14           THE COURT:  Yes.

15           MR. LIEBOWITZ:  You know, maybe Colorado, and I

16   don't know -- you know, obviously, I've filed more than 10

17   cases there.  I don't know if they're, you know, exactly

18   pending.  I'll have to look that up.

19           THE COURT:  What --

20           MR. LIEBOWITZ:  But, yeah, you know, various

21   around the country and --

22           THE COURT:  How long -- stop.

23           MR. LIEBOWITZ:  -- which I do to do my best to --

24           THE COURT:  Let me ask this question.

25           How long have you been practicing law?  How long

1   has your firm existed?

2           MR. LIEBOWITZ:  Oh, about -- about five years.

3           THE COURT:  Five years?  In those five years, is

4   it true that you filed over 2000 lawsuits in federal courts

5   around the country?

6           MR. LIEBOWITZ:  Yes, that's accurate.

7           THE COURT:  And what procedures do you have in

8   place in your firm to ensure that mistakes like the ones

9   that just happened here don't occur on a regular basis in

10  terms of scheduling, keeping track of dates, not double

11  booking, et cetera?  What procedures do you have in place?

12          MR. LIEBOWITZ:  Yeah.  So, Your Honor, we're in

13  the process now of getting software that could help out with

14  this so that things like this do not happen again and, you

15  know, things fall through the cracks.  You know, no one's

16  perfect.

17          THE COURT:  But, Mr. Liebowitz, this -- and do you

18  acknowledge that within the last 12 months, you had a case

19  dismissed by Judge Tafoya and Judge Brimmer because of this

20  exact problem?  You weren't showing up for a scheduling

21  conference with Magistrate Judge Tafoya and so your case was

22  dismissed on that ground?

23          MR. LIEBOWITZ:  I would have to go back.  I know

24  that there was, I guess, a case -- I had forgot the exact

25  facts surrounding it, but it could be.

1              THE COURT:  Okay.  How many federal district

2    courts are you appearing in at this time?

3              MR. LIEBOWITZ:  I don't know the exact amount.

4    It's, you know -- I really don't have the number.

5              THE COURT:  More than 10?  More than 20?

6              MR. LIEBOWITZ:  No.  I don't -- I don't know if

7    it's more than 10.  I mean, the -- you know -- if you're

8    saying states because, obviously, there's multiple districts

9    in each state --

10             THE COURT:  Right, that's what I want to know.

11             How many federal courts are you appearing in?  And

12   there are multiple courts in a district, too.  I mean,

13   you've got six or seven -- you're appearing in front of five

14   or six judges in this court.  How many different judges

15   around the country are you appearing in front of today, as

16   we speak?  Do you have any idea?

17             MR. LIEBOWITZ:  Oh yeah, it's a lot.  I mean, I --

18             THE COURT:  More than 50?

19             MR. LIEBOWITZ:  -- I don't have that exact number,

20   but it -- yeah, that's probably accurate.

21             THE COURT:  Okay.  In a contempt proceeding before

22   the Southern District of New York in a case called Berger

23   vs. Imagina Consulting -- you're familiar with that case,

24   right?

25             MR. LIEBOWITZ:  Yes, I am.

1           THE COURT:  Judge Cathy Seibel had a lawyer --

2    that was in front of Judge Cathy Seibel and a lawyer was

3    representing you and wrote a letter to the Court saying that

4    he'd recommended that you take a CLE in small law firm

5    management.  Did you do that?

6           MR. LIEBOWITZ:  No, I don't think so.  I don't

7    think I ended up doing that specific, you know, CLE in

8    management, but --

9           THE COURT:  Okay, stop, stop.  He also recommended

10   that you seek out an experienced mentor in the area of

11   copyright litigation.  Have you done that?

12          MR. LIEBOWITZ:  Yeah, I have.

13          THE COURT:  What's the name of that mentor?

14          MR. LIEBOWITZ:  Oh, yeah.  He's -- let me see.

15   His name is Ira Levy.

16          THE COURT:  I'm sorry?  Ira?

17          MR. LIEBOWITZ:  Ira Levy.

18          THE COURT:  And how does -- how often do you meet

19   with Mr. Levy?  How does he -- does he supervise or come

20   over and give you pointers on how to run your office?

21          MR. LIEBOWITZ:  No.  I mean, basically I could ask

22   him questions if I have any issues, but it's not -- you

23   know, it's not like a regular --

24          THE COURT:  When was the last time you spoke with

25   Mr. Levy?

1          MR. LIEBOWITZ:  Oh, I -- you know, I don't know.

2          THE COURT:  You don't know when the last --

3          MR. LIEBOWITZ:  I don't exactly --

4          THE COURT:  How many times --

5          MR. LIEBOWITZ:  -- but I know that -- no.  It was

6   -- it was -- it was -- I don't know the exact amount, but I

7   know that when the issues occurred, you know, last year, I

8   met with him and --

9          THE COURT:  How many times --

10         MR. LIEBOWITZ:  Yeah, (inaudible).

11         THE COURT:  How many -- how many times have you

12  met with Mr. Levy?

13         MR. LIEBOWITZ:  I think maybe once or twice.

14         THE COURT:  Okay.  For how long?

15         MR. LIEBOWITZ:  Maybe an hour.

16         THE COURT:  Okay.  There's a case called Usherson

17  v. Bandshell Management before Judge Jessie Furman in the

18  Southern District of New York where you were accused of

19  lying to the Court about whether you'd gotten advanced

20  permission from a mediator.  Has there been any factual

21  determination about whether there were false representations

22  made in that case?  Or is that --

23         MR. LIEBOWITZ:  No, it's still pending.

24         THE COURT:  Still pending?  Okay.

25         How many times has your firm been sanctioned by

1    courts around the country?

2          MR. LIEBOWITZ:  Well, I don't know.  I -- do you

3    want me to get the exact numbers?  I mean --

4          THE COURT:  Give me a ballpark.  More than 25?

5          MR. LIEBOWITZ:  I don't think more than 25.  I

6    think it's maybe more than 10.

7          THE COURT:  How many times -- and those are

8    monetary sanctions?  Or have there been other sanctions,

9    like dismissals of the case?

10          MR. LIEBOWITZ:  Yeah, I think it's a combination.

11          THE COURT:  Okay.  How many times have you been

12    held in contempt of Court?

13          MR. LIEBOWITZ:  You know, I think just once, I

14    believe.

15          THE COURT:  Have there been any disciplinary

16    proceedings brought against you in any of the courts where

17    you practice?

18          MR. LIEBOWITZ:  No, none at this time.

19          THE COURT:  No disciplinary proceedings are

20    currently going against you at this time?  I understand

21    generally disciplinary proceedings are confidential when

22    they're filed, but -- and I don't -- so I'm not asking

23    whether there was any discipline.  I'm asking whether there

24    are any pending proceedings going on, as we speak.

25          MR. LIEBOWITZ:  Oh, you know, I don't know what

1    you mean by "pending."  I mean, you know, obviously, the

2    public record speaks for itself.

3              THE COURT:  No.  Those are the -- there are public

4    records.  I'm asking you to tell me whether there have been

5    any disciplinary complaints brought against you that are

6    currently pending.  The way those usually work is there's a

7    -- federal courts around the country have a disciplinary

8    committee or a committee on conduct, there's a complaint

9    brought and you get an opportunity to respond.  And then,

10   ultimately, there's a recommendation to impose discipline,

11   which is either disbarment or a suspension or a reprimand.

12             And I -- as far as I can tell, there has not been

13   any discipline issued against you yet.  I'm asking you

14   whether there are any currently pending matters against you,

15   complaints that have been opened that you're defending

16   against.

17             MR. LIEBOWITZ:  Not from federal -- you know, no

18   federal complaints.  You know --

19             THE COURT:  I'm sorry, did you say, No, no federal

20   complaints?

21             MR. LIEBOWITZ:  Yeah.  I mean, I -- I had -- there

22   was a -- you know, in California, the Northern District, I

23   have a pending, you know, motion, you know, to vacate a --

24   what I feel is an erroneous, you know, disbarment order in

25   the Northern District of California.  But, you know, it's

1   erroneous, that case, and I'm dealing with it.

2           THE COURT:  But in no other proceeding -- or no

3   other court, no other grievance committee or disciplinary

4   committee has got a complaint against you where you're

5   defending against the allegations?

6           MR. LIEBOWITZ:  Yeah, not the -- the disciplinary,

7   no --

8           THE COURT:  Didn't Judge Seibel -- didn't Judge

9   Seibel in the contempt matter refer that to the disciplinary

10  committee of the federal court?

11          MR. LIEBOWITZ:  Yeah, but -- yeah, but the -- no,

12  but there was no action.

13          THE COURT:  No action was taken on that?

14          MR. LIEBOWITZ:  No.

15          THE COURT:  Is it still pending?  Are they still

16  looking at it?

17          MR. LIEBOWITZ:  I don't know.  I mean, you know,

18  things can get referred, but not -- you know, but no action

19  done.

20          THE COURT:  Okay.  Tell me about the Northern

21  District of California disbarment.  I did see an order

22  disbarring you from practicing in the Northern District

23  because you had failed to be a member of the Bar of

24  California and you'd failed to get pro hac vice admission

25  and you were just filing things on ECF and so the judge

1   there issued an order of disbarment and you have mentioned

2   that.  You said that's being challenged?

3          MR. LIEBOWITZ:  Yes, it's being challenged.

4          THE COURT:  And what's the basis for the

5   challenge?

6          MR. LIEBOWITZ:  Well, the basis for the challenge

7   is I was never a member of the roll of memberships in

8   California.  So how could I be disbarred from a district

9   where I was never admitted to begin with?

10          THE COURT:  So -- but you were practicing law

11   without a license then, right?

12          MR. LIEBOWITZ:  No.

13          THE COURT:  Well, you weren't licensed in

14   California and you weren't admitted under the rules of the

15   Northern District of California, but you were practicing law

16   there, right?

17          MR. LIEBOWITZ:  No, I'm not practic- -- I mean,

18   I'm -- I'm filing cases and pro hacing in.

19          THE COURT:  But in -- and correct me if I'm wrong,

20   but you started pro hacing in after the disbarment came up.

21   Before that, you weren't pro hacing in, right?

22          MR. LIEBOWITZ:  Well, I was -- I believe -- I

23   don't know what the timeframe is, but I know certain

24   jurisdictions around the country, you could wait, you know,

25   a certain time period to pro hac in.  And I don't think

1    that's -- you know, courts give you time to pro hac in and

2    at the time I thought that, you know, I would pro hac in at

3    a certain point later.

4             THE COURT:  Okay, all right.  So -- and the

5    reality is that you are challenging the order of disbarment

6    and that has yet to be determined; is that correct?

7             MR. LIEBOWITZ:  It has yet to be determined, yes.

8             THE COURT:  All right.  So I -- based on your

9    failures in this case, after -- you know, I'm not sure if

10   you recall, but Mr. King, pro se, had moved to dismiss this

11   case because of your long history of sanctions and

12   misconduct in other courts and early on in this case I said,

13   No, he hasn't committed any misconduct before this Court so

14   that's not a basis for a dismissal.

15            And then you did.  You didn't comply with my

16   specific orders in the scheduling conference to file your

17   Rule 26 disclosures, to file a revised scheduling order.

18   And then when I told you to file this revised scheduling

19   order to get your foot back on the bag, you completely

20   ignored what we'd done at the scheduling order.

21            So I'm asking you to show cause why, as a

22   condition of -- I'm not going to dismiss the case because

23   under the Arenas (ph) factors, I don't think dismissal is

24   merited, although I probably could do it, but I'm not going

25   to dismiss the case.

1            Instead, I'm going to ask you why I shouldn't

2      require, as a condition of going forward in prosecuting this

3      case in the District of Colorado, you shouldn't be required

4      to associate with an experienced Colorado lawyer who's

5      familiar with our practices here in the District of

6      Colorado?

7            So now's your chance to --

8            MR. LIEBOWITZ:  Yeah.  So, Your Honor, I mean, the

9      reasons why is because, you know, this was a procedural, you

10     know, scheduling, you know, issue.  I mean, it --

11           THE COURT:  Mr. -- Mr. -- but it wasn't a --

12           MR. LIEBOWITZ:  -- narrow --

13           THE COURT:  Let me just stop you for a second.

14           It was not a procedural scheduling issue.  I spent

15     half an hour on the phone with you going through dates and

16     times in the scheduling order, and you told me specifically

17     you would be able to comply with these deadlines and then

18     you didn't.  And then, I sent out another order saying, Get

19     your foot back on the bag, and you ignored that completely.

20           And then I had to enter the scheduling order

21     myself.  It doesn't happen magically, sir.  I had to do it.

22     I had to revise what you should have done and you had

23     promised me you would do.

24           So it's not just a scheduling issue.  It's a

25     disobedience of a Court order and a violation of your

1    promise to me that you would do it on time.

2            And it's a repeated practice with you and I've

3    been -- I've looked at the records all across the country,

4    in North Carolina, in the Southern District of New York,

5    here in Colorado, Judge Tafoya.  You cannot abide by the

6    rules and regulations of the courts where you are trying to

7    practice, and your suggestion that, Oh, it won't happen

8    again is belied by the fact that it has happened time and

9    time and time again.

10           So it's not just a scheduling order.

11           MR. LIEBOWITZ:  And I -- I mean, the -- I -- I

12   remember the last time that we were on the phone call with

13   Mr. Werge that it was unilateral; that it was, you know,

14   both sides needed to confer to a joint schedule, I mean.

15   And if the -- you know --

16           THE COURT:  I have listened to the tape, Mr.

17   Liebowitz.  I said, Because you're submission was so

18   skeletal -- these are the exact words -- you need to take

19   the laboring work.  And I'm not sure whether you recall, but

20   we had a specific discussion about the damages and you just

21   said, statutory damages.  And I said, I need more detail.  I

22   want to know what -- how much this case is worth, whether

23   you're really going for $150,000.  You need to put in more

24   detail about the claims.  You said, Yes, sir, I understand

25   that.

1          Well, there's none of that.  You have the exact

2    same words in the revised scheduling order that you did in

3    the original one.  So it's as if a half hour of the Court's

4    time was completely wasted, as well as another half hour

5    when I had to redo the scheduling order that you failed to

6    submit properly.

7          Go ahead, you get to say your piece.

8          MR. LIEBOWITZ:  Yes, Your Honor, I'm sorry.  I

9    mean, this is -- there's no -- you know, it's just --

10   there's just no ill-will.  I mean, this is -- you know, a

11   mistake happened and I guess I have to just leave it like

12   that.  I mean, no one's perfect.

13         I -- you know, I manage a big caseload and I have

14   limited staff.  I'm trying to get better at, you know,

15   having some programs that could help me out with, you know,

16   scheduling and making sure that things are done on time.

17   And, you know, it takes a little bit to adjust and put these

18   procedures into place.  But like I said, you know, nothing's

19   intentional, nothing's -- you know, no ill-will at all.  I

20   mean, it's just, you know, I'm only one person, you know,

21   and (inaudible) the Court to have --

22         THE COURT:  But, Mr. Liebowitz, one person

23   shouldn't be filing hundreds of lawsuits around the country.

24   You need to say no.  You need to stop soliciting more

25   clients until you get these programs in place because you're

1   going to lose your license.  You're going to lose your

2   license.

3          You can't do this.  You're an officer of the --

4   supposedly, an officer of the court and officers of the

5   court don't behave the way you do.  You don't drop the ball.

6   You don't make commitments to judges and then don't live up

7   to them

8          But you've gotten this speech before.  You got it

9   from Judge Seibel, you got it from Judge Furman, you've

10  gotten it in written orders and it doesn't seem to change,

11  right?  I mean, I'm not making this up, right?

12         There have been explicit orders time and time

13  again against you, mostly from the Southern District of New

14  York, but from other courts, too, saying that your operation

15  and how you do things is not working.

16         Judge Seibel said it and even the lawyer you had

17  representing you in that contempt proceeding said it:  That

18  you were in over your head.  You're a young and

19  inexperienced lawyer.  You're 31 years old.  You have very

20  limited experience.  He said all of those things, right?

21  Has that changed in the last six months?

22         MR. LIEBOWITZ:  Yeah.  I mean, as I said, I've

23  been putting in procedures, like getting, you know, software

24  to try to help out with these issues.  And, you know, I'm

25  not a 500-person law firm, you know.  I -- you know, my goal

1   is to help, you know, working-class photographers and, you

2   know, it's a big problem with copyright infringement and,

3   you know, I'm trying to help them.  You know, I'm not, you

4   know -- this is my goal, you know.  And if I wasn't there

5   for them, you know, there would be this, you know, big

6   corporate theft of people's photos and videos and people

7   would get away with it.

8         So, you know, I'm not, you know, saying, you know,

9   the Court should be sympathetic, but I just want to tell the

10  Court that this is the reality of the situation.

11        THE COURT:  But, actually, Mr. Liebowitz, I'm more

12  sympathetic than you know to the position of working

13  photographers but, quite frankly, that doesn't justify

14  failure to abide by Court orders and Court rules.

15        Is there anything else you'd like to add?

16        MR. LIEBOWITZ:  No.  I just wanted to let the

17  Court know that, you know, I'm truly sorry.  And, you know,

18  I am putting in, you know, procedures to, you know, make

19  sure these things don't happen, you know.  Obviously, the

20  past couple of months have been really tough with the COVID

21  situation and, you know, I have limited staff and, you know,

22  issues happen, you know.  And, you know, and I'm truly sorry

23  and, you know, hope that, you know, you'll give me the

24  chance to, you know, make things better.

25        And, you know, hopefully, when things -- we get

1  out of this COVID situation which is, you know, really

2  hurting, you know, New York and, you know, a lot of my

3  clients and it's a, you know, a pretty massive thing.  And,

4  you know, I hope the Court takes some leniency, you know,

5  given these times and that, you know, I'll submit the

6  scheduling order, I'll work with Mr. Werge on getting

7  appropriate dates.  We'll submit it and we'll continue on

8  the merits of the case.  And, you know, I think truly the --

9  you know, the justice here is making sure that the, you

10  know, working-class photographer gets paid for his work, you

11  know, and I don't think it, you know, should be just about

12  me, you know.

13          Ultimately, it should be about, you know, the

14  photographer and about the people that I'm representing.

15          THE COURT:  Okay, thank you.

16          MR. LIEBOWITZ:  You know --

17          THE COURT:  I'm going to cut you off.  I've heard

18  your argument.

19          Mr. Werge, did you have anything -- it was your

20  motion for sanction.  I'm not inclined to dismiss the case

21  because, like I said, I don't think the Arenas factors

22  matter.  I am considering an alternative sanction, as I

23  mentioned in the order to show cause.

24          Do you have anything you'd like to add?

25          MR. WERGE:  Yeah, Your Honor, just a couple of

1   quick things.

2          Regarding the scheduling order, I would just

3   identify that we -- Mr. Liebowitz did reach out to us.  It

4   was at 10:21 on the deadline of April -- p.m. on the

5   deadline of Thursday, April 30th, where it was the first

6   time he sent over the revised scheduling order and said, If

7   I don't hear from you within the next 35 minutes, I will

8   file a note that this is plaintiff's proposed plan.

9          So I didn't see that until the next morning, so we

10  didn't get a chance to look at that or confer.  And I do

11  think there's a concern about ongoing control.  And then in

12  addition, I'd like the Court to also be aware that Mr.

13  Liebowitz also unilaterally served a notice of deposition of

14  Mr. King for -- signed under the, you know, court's -- the

15  court's caption, for June 12th at 10:00 a.m. at a location

16  to be determined, in violation of Local Rule 30.1, which

17  requires conferral.

18         Again, this is a conferral issue prior to setting

19  any deposition to make sure that it's scheduled

20  appropriately and especially with (inaudible) of the case.

21         So I am concerned about those things related to

22  the sanctions.  I understand the Court's position and we

23  would endorse the Court's alternative sanction of requiring

24  Mr. Liebowitz to associate with experienced counsel that

25  practices in the District of Colorado, as well as we would

1   ask for a monetary sanction, in addition, of not less than

2   $1000.

3            THE COURT:  Okay.  All right, the issue --

4            MR. LIEBOWITZ:  Your Honor, I mean, if I could, I

5   would like to respond.

6            THE COURT:  All right, go ahead.

7            MR. LIEBOWITZ:  The deposition, you know, notice

8   is just a placeholder.  I mean, this is, you know -- you

9   know, and --

10            THE COURT:  And that -- So Mr. Liebowitz, again,

11   that's not how it works in this District.  You don't send

12   out placeholders.  It -- documents signed by lawyers have

13   real impact.  They have psychological impact, particularly

14   on people who aren't represented by counsel.  But even

15   people who are represented by counsel, it freaks people out

16   when you unilaterally send out notices of deposition because

17   that means they have to react.

18            Nobody talked to me about this.  Do I have to file

19   a motion for a protective order?  Am I going to get in

20   trouble if my client doesn't show up?  That's why the rules

21   of this Court require conferral.  And anybody who has a law

22   license in the State of Colorado or carries a law license

23   issued by the United States District Court for the District

24   of Colorado knows that and that's emblematic to the problem

25   I see here, is that you don't know how to practice law and

1   you don't specifically know how to practice law in the

2   District of Colorado.

3            So it's not a placeholder.

4            MR. LIEBOWITZ:  Well, Your Honor --

5            THE COURT:  Placeholders don't work.

6            MR. LIEBOWITZ:  Well, Your Honor, I mean, the same

7   lines of, you know, why did Mr. Werge run into court to file

8   a motion to dismiss for lack of prosecution instead of

9   picking up the phone and conferring with me about the issue?

10  Why was that not done?

11           THE COURT:  Do you have anything else to respond

12  to that you'd like to say?

13           MR. LIEBOWITZ:  Are you talking about -- to me

14  or --

15           THE COURT:  Yes.  Mr. Liebowitz, anything else?

16  This is your rebuttal time.

17           MR. LIEBOWITZ:  Yeah.  I pose -- I pose that

18  question.  You know, if everything's on me, you know, of why

19  I didn't meet and confer, you know, why was that not brought

20  up, you know?  And we had to respond back to their motion to

21  dismiss the case for lack of prosecution.

22           If all Mr. Werge did was pick up the phone or

23  e-mail me and find out what's going on with the status of

24  the case, you know, I would have said, you know, what was

25  happening.  And instead, he rushed into court and had us

1    respond to a motion.  I mean, isn't that against the local

2    rule?

3            THE COURT:  Mr. Liebowitz, is it true that you

4    sent him --

5            MR. LIEBOWITZ:  (Inaudible) --

6            THE COURT:  Is it true that you sent him the draft

7    proposed scheduling order at 10:41 p.m. saying, If I don't

8    hear back --

9            MR. LIEBOWITZ:  Yeah --

10           THE COURT:  -- in the next 45 minutes?

11           MR. LIEBOWITZ:  Yeah, I agree with you on there,

12    but I did get it in on time.  I mean, you know, granted, I

13    -- it was, you know, a little late, but I wanted to abide by

14    the Court's order of getting it in on time, you know.  And,

15    you know, where's the Court's reaction to, you know, defense

16    counsel not, you know, meeting and conferring or, at the

17    very least, the next day conferring and submitting another

18    plan, you know, about -- that late but still, you know,

19    meeting, conferring and submitting another plan?  Why was

20    that not done?

21           So I don't think that this case is all about me,

22    you know, and, you know, things should have been done.  You

23    know, I understand the issues that I have, but I don't think

24    the blame should all be on me.  I think that, you know,

25    other opposing counsel should have been more proactive, you

1    know, and, Your Honor, I think there were local rules that

2    were violated by him.

3         So I don't think that the whole blame should be on

4    me.

5         THE COURT:  Okay.

6         MR. LIEBOWITZ:  And I would like to request

7    monetary amounts in responding to that motion to dismiss for

8    lack of prosecution because, Your Honor, opposing counsel

9    did not follow the local rule to meet and confer before

10   rushing into court.

11        MR. WERGE:  Judge, if I may, briefly?

12        THE COURT:  No.  Okay, Mr. Werge.  What did you

13   want to say?

14        MR. WERGE:  Just very briefly, I just want to

15   identify for the record that the local rules do not require

16   conferral on motions to dismiss -- or dispositive motions,

17   including motions for summary judgment on motions to

18   dismiss.

19        THE COURT:  Okay.  All right, it stands submitted.

20        I'm -- so I'm granting the -- so just for the

21   minutes, Ms. Libid, I'm taking under advisement Docket

22   Number 36, the motion to dismiss, pursuant to Rule 12(b)(6).

23   In terms of the motion to assert claims against third party,

24   that's being granted and Mr. Werge has seven days to submit

25   the third-party complaint.  And then the motion to dismiss

35

1    for lack of prosecution, I'm also going to take under

2    advisement.

3           It's not likely that I'll be dismissing the case

4    because I don't think that the Arenas factors apply, but I'm

5    going to consider alternative sanctions.

6           We'll be in recess.

7           (Whereupon, the within hearing was then in

8    conclusion at 11:51 a.m.)

9

10

11                    TRANSCRIBER'S CERTIFICATION

12   I certify that the foregoing is a correct transcript to the

13   best of my ability to hear and understand the audio

14   recording and based on the quality of the audio recording

15   from the above-entitled matter.

16

17   /s/ Dyann Labo                    June 19, 2020

18   Signature of Transcriber              Date

19

20

21

22

23

24

25