IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01437-CMA-NRN

LANDON MONDRAGON,

Plaintiff,

v.

NOSRAK LLC and KASEY KING,

Defendant.
-------------------------------------------
NOSRAK LLC and KASEY KING,

Third-Party-Plaintiffs,

v.

JESSICA MOORE,

Third-Party-Defendant.

## ORDER ON MOTION FOR COST BOND (Dkt. #87)

**N. REID NEUREITER**
**United States Magistrate Judge**

This is a copyright infringement case filed on behalf of photographer, Landon Mondragon, against Nosrak LLC ("Nosrak") and Kasey King for publishing several fashion images on Instagram that Mondragon claims as his own. Mr. Mondragon's Amended Complaint alleges, without providing any factual basis, that Mr. King and Nosrak's use of the images was "willful, intentional, and purposeful, in disregard of and indifferent to Plaintiff's Rights," and claims statutory damages of "up to $150,000 per work" for willful infringement.

Nosrak, formed in part by Mr. King, was a company that had tried to sell a few stylish hats. King and Nosrak, for their part, allege that the images in question were provided to them by Third-Party Defendant photographer/model Jessica Moore in exchange for use of the hats that were worn in the photographs. This version of events has been corroborated by a sworn affidavit from Ms. Moore, who claims she is the true author of the images. King and Nosrak filed a third-party claim against Ms. Moore for the damages incurred for having to defend against this suit. King and Nosrak insist that they are liable for, at most, $200 for innocent use of the images, and only if the pictures belong to Mondragon. If the images are the property of Ms. Moore, King and Nosrak are liable for nothing, because Ms. Moore acknowledges that she provided the images to Nosrak in exchange for use of the hats that were worn in the images. And, even if the photographs belong to Mr. Mondragon, there is still a good argument that Nosrak and King had an express license to use the images in exchange for the use of the Nosrak hats.

The matter comes before me on Third Party Defendant Jessica Moore's motion for a cost bond. Mr. King and Nosrak have joined Ms. Moore in demanding that Mr. Mondrgon post a cost bond as a condition of proceeding with the litigation.

This case was originally filed May 20, 2019, by attorney Richard Liebowitz. Mr. Liebowitz is a relatively inexperienced New York-based lawyer who has made his brief legal career by turning copyright infringement law into a volume practice. This has resulted in Mr. Liebowitz filing thousands of copyright lawsuits in federal courts across the country without conducting the kind of due diligence that is usually expected before filing a federal court lawsuit. As a result of Liebowitz's corner-cutting and other slipshod

practices, he has been sanctioned dozens of times for, among other things, making false representations to judges, making baseless allegations in pleadings, and missing deadlines. *See*, *e.g., Usherson v. Bandshell Artist Mgmt*, No. 19-CV-6368 (JMF), 2020 WL 3483661 (June 26, 2020) (sanctioning Mr. Liebowitz $103,517.49 and attaching as an appendix to the decision a list of forty other cases where Mr. Liebowitz was sanctioned or warned for misbehavior, false representations, discovery abuse, baseless pleadings, or other misconduct); *McDermott v. Monday Monday, LLC*, No. 17-CV-9230 (DLC), 2018 WL 5312903, at *3, 2018 U.S. Dist. LEXIS 184049, at *9–10 (S.D.N.Y. Oct. 26, 2018) (denying Mr. Liebowitz's request for the Court to redact the term "copyright troll" from an opinion that described him as such because "[a]s evidenced by the astonishing volume of filings coupled with an astonishing rate of voluntary dismissals and quick settlements, it is undisputable that Mr. Liebowitz is a copyright troll"); *Sands v. Bauer Media Grp. USA, LLC*, No. 17-CV-9215 (LAK), 2019 WL 6324866, at *1–3 (S.D.N.Y. Nov. 26, 2019) (dismissing an action with prejudice because of Mr. Liebowitz's client's failure to post a bond to cover costs and attorney's fees awarded to the opposing party because of Mr. Liebowitz's "discovery abuse" and "failure ... to comply with discovery obligations"); *Ward v. Consequence Holdings, Inc.*, No. 18-CV-1734 (NJR), 2020 WL 2219070, at *3 (S.D. Ill. May 7, 2020) (concluding that Mr. Liebowitz "likely filed this action as a bad faith, frivolous effort to harass [the defendant]"; imposing $20,000 in sanctions under the Court's inherent authority; and noting that "Liebowitz's conduct in this case has been irresponsible, unreasonable, and detrimental to the fair administration of justice, harming both [the defendant], the Court, and even his own client, who has lost his opportunity to advance what appears to have been a

meritorious claim"); *Rock v. Enfants Riches Deprimes, LLC*, No. 17-CV-2618 (ALC), 2020 WL 468904, at *4, *7 (S.D.N.Y. Jan. 29, 2020) (granting attorney's fees against Mr. Liebowitz's client totaling over $100,000, $10,000 of which Mr. Liebowitz and his firm were responsible for as sanctions, and finding that Mr. Liebowitz's "conduct—of failing to investigate the evidentiary basis for a Complaint, of stonewalling discovery, of misleading the Court, and of making meritless arguments—undoubtedly demonstrates bad faith"); *Ramales v. Alexander Wang Inc.*, No. 20-CV-0926 (DLC), ECF No. 32, ¶¶ 9–11 (S.D.N.Y. June 12, 2020) (declaration in support of a sanctions motion stating that opposing counsel repeatedly requested licensing history from Mr. Liebowitz, who first claimed he could not retrieve it "without a subpoena," and then admitted that there was "no licensing history and that his client was wrong," at which point he filed a notice of settlement and avoided adjudication of the sanctions motion).

Indeed, in this very case, the undersigned had to sanction Mr. Liebowitz for his failure to comply with pretrial court orders. *See* Dkt. #51. Rather than complying with the sanction, which would have required him to associate with experienced Colorado counsel to proceed with the case, Mr. Liebowitz withdrew from this and all his other District of Colorado cases, turning the matter over to current counsel, Craig Sanders, who is based in Garden City, New York.

Important to the Motion for Cost Bond currently before the Court, numerous courts have found that, given Mr. Liebowitz's history of filing claims of dubious factual and legal merit, and repeated instances of misbehavior, imposition of a cost bond would be appropriate in similar copyright infringement cases brought by Mr. Liebowitz. *See, e.g., Mango v. Democracy Now! Prods.*, No. 18-CV-10588 (DLC), 2019 WL 3325842, at

*6 (S.D.N.Y. July 24, 2019) (concluding that "[t]he history of Liebowitz's failure to comply with court orders counsels in favor of the imposition of an additional bond" on his client); *Lee v. W Architecture & Landscape Architecture, LLC*, No. 18-CV-5820 (PKC) (CLP), 2019 WL 2272757, at *5, at *12-13 (E.D.N.Y. May 28, 2019) (relying on "counsel's history of violating court orders," both "in this case" and in "other cases," to impose a bond on Mr. Liebowitz's client, and noting that "plaintiff has failed to timely file motion papers and failed to move this case forward"); *Leibowitz v. Galore Media Inc.*, No. 18-CV-2626 (RA) (HBP), ECF No. 18, at 6 (S.D.N.Y. July 11, 2018) (ordering Mr. Liebowitz's client to post a bond in part because "defendant has a justified concern that plaintiff's counsel, Richard P. Liebowitz, will evade court orders or voluntarily dismiss the action in an attempt to make plaintiff's assets unreachable in the event costs are awarded to defendant") .

    Once Mr. Sanders entered his appearance, the Court held a status conference where Mr. Sanders conceded that prior to entering his appearance, he had not done complete due diligence on this case to determine the bona fides of his client's claims. Thus, despite Mr. Liebowitz's withdrawal from the case, it retains the taint of having its origin in Mr. Liebowitz's volume copyright practice technique of "file first—ask questions later."

    Ms. Moore moves to have Plaintiff, a nonresident of Colorado, post a cost bond as security to assure eventual payment of costs that may be taxed against the plaintiff at the end of a case. *Deatley v. Stuart*, No. 13-CV-01140-REB-BNB, 2013 WL 6068468, at *2 (D. Colo. Nov. 15, 2013), report and recommendation adopted, No. 13-CV-01140-REB-BNB, 2014 WL 700029 (D. Colo. Feb. 24, 2014). Mr. Mondragon objects that Ms.

Moore has no standing to seek a cost bond from him, because he has not sued Ms. Moore. She is, instead, the defendant in the third-party claim filed by Mr. King and Nosrak. But the Court finds that the issue of standing has been mooted because Mr. King and Nosark have joined in the motion to require Mr. Mondragon to post a cost bond.

Requiring a cost bond in federal court is within the court's discretion. *Maddox v. Venezio*, No. 09-cv-01000-WYD-MEH, 2009 WL 4730745, at *1 (D. Colo. Dec. 3, 2009); *see also Radoshevich v. Cent. Bank of Colorado Springs*, 117 F.R.D. 434, 435 (D. Colo. 1987) ("This Court has the inherent authority to require security for costs."). The following three factors are considered: 1) the merits of plaintiff's claims (that is, whether they are dubious); 2) the ability or willingness of the plaintiff to pay any costs which may be assessed; and 3) substantial costs which might be incurred by the defendant during preparation for trial. *Id.* (citing *Hartnett v. Catholic Health Initiatives*, 47 F. Supp. 2d 1255, 1256 (D. Colo. 1999)); *see also Medcorp, Inc. v. Pinpoint Techs.*, Inc., No. 08-CV-00867-MSK-KLM, 2010 WL 4932669, at *3 (D. Colo. Nov. 30, 2010) (ordering a plaintiff to post a cost bond in the amount of $100,000).

Mr. Mondragon argues that Defendants are seeking to impose a "play-to-play" litigation tactic that undermines the fair administration of justice. But lawsuits cost money. And a meritless lawsuit will ultimately result in a cost award against a plaintiff. Where a plaintiff's prior counsel has a long history of bringing dubious lawsuits that impose significant costs on defendants, purely for the purpose of extracting an unjustified settlement, then imposition of a cost bond may be important to ensure that

justice is fairly administered and that the mechanism of a lawsuit is not used inappropriately as a tool for injustice.

On the issue of merit, the Court finds that Mr. Mondragon's claims against Mr. King and Nosrak are of dubious merit. Ms. Moore has submitted a sworn affidavit that is entirely consistent with Mr. King's position—that Mr. King provided hats to Ms. Moore in exchange for photographs that Nosrak could use for publicity and advertising. Mr. King and Nosrak had no reason to disbelieve Ms. Moore's representations that the photographs were theirs to use. Based on what has been presented to date, if the images do belong to Mr. Mondragon, at most, Mr. King and Nosrak would be liable for no more than $200 for innocent infringement. But even if they do belong to Mr. Mondragon, per Ms. Moore's affidavit, there seemingly was an explicit understanding with Mr. Mondragon that the photographs could be used in exchange for use of the hats as part of the model's wardrobe. If such an explicit or even implicit agreement existed, it constituted a license and Nosrak was entitled to use the hats on its Instagram feed. In addition, neither in the Complaint, nor as far as has been presented to date, is there any evidence at all suggesting that Mr. King was involved in the posting of the disputed images on Instagram. I have seen no justification or basis for suing Mr. King personally. Thus, Mr. Mondragon's claims against Nosrak and Mr. King appear of dubious merit.

As to the ability or willingness of Mr. Mondragon to pay Nosrak and Mr. King's costs incurred in the litigation of this case, Mr. Mondragon does not reside in Colorado and there has been no representation as to his ability (or enthusiasm) to pay any adverse cost award. Colorado state law provides that where a plaintiff is not a resident of this state, the court may, upon motion of the defendant, require the nonresident

plaintiff to post a cost bond. See Colo. Rev. Stat. §§ 13-16-101 and 102. In this District, it is the at the Court's discretion whether to apply the Colorado statutes at issue and to apply a cost bond to a nonresident plaintiff. See Maddox, 2009 WL 4730745, at *1.

On the issue of the potential costs in this case, I cannot conclude that the costs will be excessive compared to the normal civil lawsuit. There will likely be a few depositions and some written discovery. But the potential costs must be measured against the nature of the claims and the parties involved. Costs that may seem modest to a large company in a case involving millions of dollars nevertheless may be "substantial" for a dormant two-person LLC and an individual. It has been represented, and Mr. Mondragon does not dispute, that that Nosrak was a small company (no longer in business because of this lawsuit) that made just a few hats for purposes of sale at flea markets. Mr. King's full-time occupation is that of an automobile mechanic. He cannot afford his own counsel, so counsel was appointed for him by the Court. For someone like Mr. King, even a few thousand dollars in litigation costs could be considered "substantial."

Taking into account the factors described in Maddox, including the dubious origins and merit of this case, the fact the plaintiff is from out of state and collecting a cost award may prove difficult, and the impecunious nature of the Defendants, I find that it is appropriate that the Plaintiff post a reasonable cost bond of $3,500 to proceed with the prosecution of this case.

**IT IS THEREFORE ORDERED** Defendants' Motion for Cost Bond is **GRANTED IN PART** and that on or before November 27, 2020, Plaintiff shall post a cost bond in the amount of $3,500 with the Clerk of the District Court for the District of Colorado.

**SO ORDERED.**

Date: November 12, 2020                     _____
                                            N. Reid Neureiter
                                            United States Magistrate Judge

9