IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-1437-CMA-NRN

LANDON MONDRAGON
Plaintiff / Counterclaim-Defendant / Counterclaimant

v.

NOSRAK LLC and KASEY KING,
Defendants

-----------------------------------------------------

NOSRAK LLC,
Third-Party-Plaintiff,
v.

JESSICA MOORE,
Third-Party-Defendant / Counterclaimant / Counterclaim-Defendant.

---

**MOTION FOR SUMMARY JUDGMENT OF NO COPYRIGHT INFRINGEMENT**

---

Counterclaim-Defendant Jessica Moore hereby moves for Summary Judgment against the copyright infringement counterclaim asserted by Plaintiff/Counterclaimant Landon Mondragon based on the affirmative defense of an implied license.

## I. INTRODUCTION

The gist of this case is that Defendant Nosrak supplied several hats as the wardrobe for a photo shoot with the expectation of using the resulting photographs of its hats—but Mondragon then sued Nosrak for copyright infringement. After the Court found Mondragon's claim to be "dubious" in view of Nosrak's license defense [ECF 109], Mondragon voluntarily dismissed his claim against Nosrak with prejudice—but persists in pursuing his dubious claim against Moore for

contributory infringement based on the same facts because Moore had delivered the photographs to Nosrak.

The undisputed evidence and Mondragon's own admissions demonstrate there was at least an implied license such that summary judgment of no infringement should be granted.[1]

## II. BACKGROUND

Mondragon is a home contractor in Arizona (Movant's Appx., APP.020 - Juo Exh. E) who asserts in this lawsuit that he is a professional photographer.

Moore is a professional photographer who resided in Colorado. Movant's Appx., APP.027 - Moore Decl. at ¶ 3.

Nosrak is a small Colorado business that was formed by Kasey King ("Mr. King") to make and sell stylish hats. [ECF 109].

The five photographs ("Asserted Photographs") underlying Mondragon's copyright infringement claim were created during a photo shoot in Arizona ("Arizona Photo Shoot") on the weekend of January 19, 2019. Movant's Appx., APP.028 - Moore Decl. at ¶¶ 4–5. The purpose of the photo shoot was for Mr. Mondragon to gain photography experience. *Id.* at ¶ 5.

### A. The Arizona Photo Shoot

Moore selected the wardrobe for the Arizona Photo Shoot in consultation with Mondragon. Movant's Appx., APP.028 - Moore Decl. at ¶¶ 6–11. Nosrak, one of Moore's photography clients,

[1] The present motion is dispositive of the only claim that Plaintiff/Counterclaimant Mondragon has asserted against Moore, and does not address Moore's counterclaim for declaratory judgment regarding joint authorship of the asserted photographs. Should summary judgment be granted here, the resulting judgment can be certified in accordance with Rule 54(b) because different injunctive relief is being sought. In addition, the scope of evidence to be presented at trial will be significantly reduced and narrowed if summary judgment is granted because facts regarding alleged infringement would not need to be presented at trial.

agreed to provide hats to be used as wardrobe for the Arizona Photo Shoot in exchange for being able to use the photographs featuring its hats. Movant's Appx., APP.028 - Moore Decl. at ¶ 7.

A few days before travelling to Arizona for the photo shoot, Moore sent a video by text message to Mondragon showing him the Nosrak hats that Moore could take to the Arizona Photo Shoot. Movant's Appx., APP.029 - Moore Decl. at ¶ 10. Mondragon's response was, "Love those hats." *Id.* A screenshot of the text message sent to Mondragon, and his affirmative response, is reproduced below:[2]




With Mondragon's blessing, Moore transported the Nosrak hats to Arizona for the photo shoot. Movant's Appx., APP.030 - Moore Decl. at ¶ 12. The hats were supplied by Nosrak for nothing other than the right to use the resulting photographs of its hats. *Id.* (Moore Decl. at ¶ 7).

[2] A copy of the video sent to Mondragon also is attached at Movant's Appx., APP.035 - Moore Exh. C.

Before the Arizona Photo Shoot, Moore informed Mondragon that trade work, where businesses supply wardrobe or other products for a photo shoot in exchange for being able to use the resulting photographs featuring those products later, is a common industry practice for professional photographers. Movant's Appx., APP.030 - Moore Decl. at ¶ 14.

At the Arizona Photo Shoot, photographs were taken of Moore wearing the Nosrak hats where Mondragon was the one who pressed the camera's shutter button. Movant's Appx., APP.028 - Moore Decl. at ¶ 7. All of the asserted photographs feature the hats that Nosrak had provided for the photo shoot in exchange for being able to use the photographs of its hats. *Id*.

### B. Nosrak Posted the Photographs of Its Hats on Social Media

In accordance with the routine condition for trade work in taking and using the Nosrak hats for the Arizona Photo Shoot, Moore delivered copies of the Asserted Photographs to Nosrak. Movant's Appx., APP.030 - Moore Decl. at ¶ 15.

Nosrak posted the Asserted Photographs on social media shortly thereafter in late January 2019. Movant's Appx., APP.030 - Moore Decl. at ¶ 16. Moore also posted at least one of the Asserted Photographs on her own social media account. *Id*.

Mondragon accused Nosrak in February 2019 of copyright infringement for posting the Asserted Photographs on social media. Movant's Appx., APP.030 - Moore Decl. at ¶ 17.

After Nosrak informed Moore of Mondragon's claim, Moore responded that Nosrak had the right to use the Asserted Photographs of its hats. Movant's Appx., APP.030 - Moore Exh. ¶ 17.

On April 19, 2019, Mondragon's attorney, Richard Liebowitz, filed a copyright application for Mondragon, claiming that the Asserted Photographs were first published in January 2019. Movant's Appx., APP.022–APP.026 - Juo Exhs. F and G.

### C. Procedural History of This Copyright Lawsuit

Mondragon then sued Nosrak for copyright infringement on May 20, 2019. [ECF 1]. Mondragon later amended his complaint to add Mr. King as a co-defendant. [ECF 20].

In the Answer, Mr. King asserted that he had a license to use the Asserted Photograph based on statements that had been made by Moore. [ECF 23].

*Pro bono* counsel was later appointed for Nosrak and Mr. King. [ECF 32 and ECF 34]. Afterwards, a summons for the third-party complaint by Nosrak was served on Moore. [ECF 76].

#### 1. Mondragon Switches Attorneys But "Retains the Taint"

In the meantime, Mondragon counsel, Richard Liebowitz (whose brief legal career has been characterized by "corner-cutting and other slipshod practices" as he turned copyright law "into a volume business," [ECF 109] at 2) was mismanaging the lawsuit.

> [I]n this very case, [Magistrate Judge Neureiter] had to sanction Mr. Liebowitz for his failure to comply with pretrial court orders. See Dkt. #51. Rather than complying with the sanction, which would have required him to associate with experienced Colorado counsel to proceed with the case, Mr. Liebowitz withdrew from this and all his other District of Colorado cases, turning the matter over to current counsel, Craig Sanders.
>
> * * *
>
> Once Mr. Sanders entered his appearance, the Court held a status conference where Mr. Sanders conceded that prior to entering his appearance, he had not done complete due diligence on this case to determine the bona fides of his client's claims. Thus, despite Mr. Liebowitz's withdrawal from the case, it **retains the taint** of having its origin in Mr. Liebowitz's volume copyright practice technique of "file first—ask questions later."

[ECF 109] at 4 and 5 (emphasis added).

Indeed, even after withdrawing from this action to avoid having to abide by the Court's sanction order, Mr. Liebowitz later paid a security bond in the amount of $3,500 on Mondragon's behalf. [ECF 115] and [ECF 126].

**2. Mondragon's Infringement Claim Is Found to be "Dubious"**

Mr. Sanders was retained as Mondragon's counsel before Moore appeared in this action in response to Nosrak's third-party complaint.

Moore filed a motion to require Mondragon to post a security bond. [ECF 87]. Nosrak later joined that motion. [ECF 88]. On November 12, 2020, the Court found that Mondragon's infringement claims against Mr. King and Nosrak were of "dubious merit," noting the evidence showed "Mr. King provided hats to Ms. Moore in exchange for photographs that Nosrak could use for publicity and advertising." [ECF 109] at 7. The Court ordered Mondragon to post a bond in the amount of $3,500 (which, as previously noted, was then paid by Mondragon's prior counsel, Mr. Liebowitz).

On November 20, 2020, however, Mondragon filed a Counterclaim against Moore for contributory copyright infringement based on the same facts as his dubious infringement claim against Nosrak. [ECF 112].

Then, on December 10, 2019, Mondragon moved to have his copyright infringement claim against Nosrak and Mr. King dismissed with prejudice in this action. [ECF 121]. The Court granted the motion and dismissed Mondragon's infringement claim against Nosrak and Mr. King with prejudice on January 8, 2021. [ECF 131].

### D. Mondragon's Averments and Admissions in Discovery

On December 9, 2020, Moore served Requests for Admission and Interrogatories on Mondragon. Movant's Appx., APP.003–APP.009 - Juo Exh. A (Requests for Admissions).

On January 7, 2021, the day before the responses were due, Mondragon requested a one-week extension of time to respond. Movant's Appx., APP.010–APP.011 - Juo Exh. B. Moore agreed to the requested extension. *Id*. The extended due date for Mondragon's responses was now January 15, 2021—but Mondragon did not serve any timely discovery responses by that date. Movant's Appx., APP.002 - Juo Decl. at ¶ 4. Instead, Mondragon served his responses to Moore's Interrogatories and Requests for Admission eight days later on January 23, 2021. Movant's Appx., APP.002 - Juo Decl at ¶ 5.

The next business day, January 25, 2021, counsel for Moore sent an email to counsel for Mondragon noting deficiencies in Mondragon's late discovery responses and that the Requests for Admission were already admitted under Rule 36. Movant's Appx., APP.012 - Juo Exh. C. Discovery closed on January 29, 2021, *see* [ECF 114], and Moore received no response to the January 25, 2021 email. Movant's Appx., APP.002 - Juo Decl. at ¶ 5.

## III. STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Nosrak agreed to supply hats to be used as wardrobe for photographs to be taken the Arizona Photo Shoot. Movant's Appx., APP.028 - Moore Decl. at ¶¶ 7–8.
2. A video showing the Nosrak hats available for Moore to take to the Arizona Photo Shoot was sent to Mondragon. Movant's Appx., APP.028 - Moore Decl. at ¶ 9.
3. Mondragon responded to the video with a text message saying, "Love the hats." Movant's Appx., APP.029 - Moore Decl. at ¶ 10, and APP.034 - Moore Exh. B.

4. Moore transported the Nosrak hats to the Arizona Photo Shoot. Movant's Appx., APP.030 - Moore Decl. at ¶ 12.
5. The Nosrak hats were used at the Arizona Photo Shoot without objection by Mondragon. Movant's Appx., APP.030 - Moore Decl. at ¶ 13.
6. The Nosrak hats appear in all of the Asserted Photographs created at the Arizona Photo Shoot. Movant's Appx., APP.028 - Moore Decl. at ¶ 7.
7. Mondragon knew that photographs created at the Arizona Photo Shoot would be posted on social media. Movant's Appx., APP.016 - Juo Exh. D (Mondragon's verified response to Interrogatory No. 1).
8. Moore delivered the Asserted Photographs to Nosrak after the Arizona Photo Shoot. Movant's Appx., APP.030 - Moore Decl. at ¶ 15.
9. Nosrak posted the asserted photographs on its social media account on the Instagram platform in late January 2019. Movant's Appx., APP.030 - Moore Decl. at ¶ 16.
10. Copyright Registration No. VA 2-149-814 states that the asserted photographs were all first published in January 2019. Movant's Appx., APP.025–APP.026 - Juo Exh. G.
11. Mondragon hired Moore to teach Mondragon about photography at the Arizona Photo Shoot. Movant's Appx., APP.007 - Juo Exh. A (Request for Admission No. 1).
12. Mondragon was aware before the Arizona Photo Shoot that the hats used at the Arizona Photo Shoot were provided by Nosrak. *Id.* (Request for Admission No. 2).
13. Mondragon was aware at the time of the Arizona Photo Shoot that the hats used at the Arizona Photo Shoot were provided by Nosrak in exchange for the use of the resulting photographs of the Nosrak hats. *Id.* (Request for Admission No. 3).

14. Mondragon did not place any restriction on the use of any of the Asserted Photographs before February 2020. *Id*. (Request for Admission No. 4).

15. The Asserted Photographs were first published by Nosrak in January 2019. *Id*. (Request for Admission No. 5).

## IV. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is designed to isolate and dispose of factually or legally unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Under Rule 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears the initial burden of presenting evidence to show the absence of a genuine issue of material fact. *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). "A fact in dispute is 'material' if it might affect the outcome of the suit under the governing law; the dispute is 'genuine' if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party." *Newland v. Stevinson Toyota E., Inc.*, 505 F. Supp. 2d 689, 696 (D. Colo. 2007) (citations omitted).

### B. Copyright Infringement

To prevail on a claim of copyright infringement, a plaintiff must establish (1) ownership of a valid copyright, and (2) the defendant's violation of any one of the exclusive rights granted to copyright owners under 17 U.S.C. § 106. *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 831–32 (10th Cir. 1993).

However, "a copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement." *Jacobsen v. Katzer*, 535 F.3d 1373, 1380 (Fed. Cir. 2008).

**C. Copyright License May Be "Implied from Conduct"**

The existence of a license is an affirmative defense to copyright infringement. *Effects Assoc. v. Cohen*, 908 F.2d 555, 558 (9th Cir. 1990); *I.a.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996).

"To determine whether an implied license exists, courts apply what has come to be known as the *Effects* test." *Xtomic*, 340 F. Supp. 3d at 1100. An implied license arises where "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes the particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work." *Shaver*, 74 F.3d at 776 (citing *Effects*, 908 F.2d at 558–59).

The *Effects* test is not a rigid test, however, and an implied license could arise in other circumstances where the totality of the parties' conduct supports such an outcome. *Baisden v. I'M Ready Prods., Inc.*, 693 F.3d 491, 501 (5th Cir. 2012).

A license to use a copyrighted work may be verbal or "even implied from conduct." *Xtomic, LLC v. Active Release Techniques, LLC*, 340 F. Supp. 3d 1092, 1100 (D. Colo. 2018) (citing *Shaver*, 74 F.3d at 775); *Field v. Google Inc.*, 412 F. Supp. 2d 1106, 1116 (D. Nev. 2006) ("Consent to use the copyrighted work need not be manifested verbally").

"Courts focus on **objective evidence** revealing the intent of the parties to determine if an implied license exists." *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1235 (11th Cir. 2010)

(emphasis added); *see also Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 756 (9th Cir. 2008) ("**objective** intent . . . as manifested by the parties' **conduct**" (emphasis added)).

Furthermore, "an implied license will be limited to a specific use only if that limitation is expressly conveyed when the work is delivered." *Latimer*, 601 F.3d at 1235; *see also Limecoral, Ltd. v. Careerbuilder, LLC*, 889 F.3d 847 (7th Cir. 2018) ("Absent a limitation imposed on the license at the time these works were delivered to CareerBuilder, the license impliedly granted to CareerBuilder would encompass all of the rights of LimeCoral as the copyright holder.").

## V. DISCUSSION

Two separate arguments are made in this motion. First, there is an implied license for the Asserted Photographs. Second, Mondragon's infringement claim against Moore is barred because of his now-adversely-adjudicated infringement claim against Nosrak.

### A. If There Is an Implied License, Then There Is No Infringement

Mondragon alleges that Moore contributed to direct infringement by Nosrak because Moore delivered the Asserted Photographs to Nosrak. [ECF 112]. But if Nosrak had an implied license, then there is no direct infringement—and if there is no direct infringement, then there can be no contributory infringement. *Sony Corp. of Am. v. Universal City Studios, Inc*., 464 U.S. 417, 442 (1984) (holding no contributory infringement where there were substantial non-infringing uses); *cf. Deepsouth Packing Co., Inc. v. Laitram Corp*., 406 U.S. 518 (1972) ("there can be no contributory infringement without the fact or intention of a direct infringement" in a patent case).

Because an implied license is an affirmative defense, Moore has the burden of establishing there was an implied license. *See, e.g., Shaver*, 74 F.3d at 775. Here, the parties' conduct objectively support finding that all three prongs of the implied license test have been satisfied.

**1. Request for the Asserted Photographs**

The first prong for establishing an implied license is whether Nosrak requested the creation of the Asserted Photographs. *See, e.g.*, *Xtomic*, 340 F. Supp. 3d at 1100.

Nosrak supplied hats as wardrobe for the Arizona Photo Shoot and requested photographs featuring those hats. Movant's Appx., APP.028 - Moore Decl. at ¶¶ 6–8. Moore sent a video of the Nosrak hats to Mondragon for the Arizona Photo Shoot, and Mondragon approvingly responded, "Love the hats." Movant's Appx., APP.029 - Moore Decl. at ¶ 10, and APP.034 - Moore Exh. B. Not only did Mondragon not object, he affirmatively approved the use of the Nosrak hats as wardrobe for the Arizona Photo Shoot.

In addition, it has already been deemed admitted by operation of Rule 36(a)(3) of the Federal Rules of Civil Procedure that Mondragon was aware beforehand that the hats to be used at the Arizona Photo Shoot were provided by Nosrak. Movant's Appx., APP.007 - Juo Exh. A (Request for Admission No. 2).

This first prong is satisfied even though Moore was the intermediary for this request. In *Latimer*, the Eleventh Circuit held that communications through an intermediary satisfied this prong. *Id*., 601 F.3d at 1235–36.

**2. Photographs Were Created and Delivered**

The second prong is whether Mondragon created or made the work and delivered it to Nosrak. *See, e.g.*, *Xtomic*, 340 F. Supp. 3d at 1100. A work may be "constructively delivered" under an implied license. *Latimer*, 601 F.3d at 1235

Mondragon affirmatively used the Nosrak hats in creating the Asserted Photographs taken at the Arizona Photo Shoot. Movant's Appx., APP.028–APP.030 - Moore Decl. at ¶ 10–15. All of

the Asserted Photographs feature one of the Nosrak hats. Movant's Appx., APP.028 - Moore Decl. at ¶ 7. Mondragon could not have created the Asserted Photographs of Nosrak's hats but for accepting those hats supplied by Nosrak. And Moore accordingly delivered the resulting Asserted Photographs featuring those hats to Nosrak. Movant's Appx., APP.030 - Moore Decl. at ¶ 15.

### 3. Objective Intent as Manifested by the Parties' Conduct

The third prong is whether the parties' conduct establishes an objective intent by Mondragon for Nosrak to copy and distribute the photographs. *See, e.g.*, *Xtomic*, 340 F. Supp. 3d at 1100.

First, it has already been deemed admitted under Rule 36(a)(3) that Mondragon was aware at the time of the Arizona Photo Shoot that the hats used at the Arizona Photo Shoot were provided by Nosrak in exchange for the use of the resulting photographs of the Nosrak hats. Movant's Appx., APP.007 - Juo Exh. A (Request for Admission No. 3).

Second, Mondragon's verified interrogatory response indicates that he knew those photographs would be posted on social media. Movant's Appx., APP.016 - Juo Exh. D (Response to Interrogatory No. 1).

Third, as previously discussed, Mondragon reviewed ("Love those hats") and affirmatively used Nosrak's hats that were being supplied at no charge otherwise for the Arizona Photo Shoot. Movant's Appx., APP.028–030 - Moore Decl. at ¶¶ 7–13. Mondragon could not have created the Asserted Photographs without accepting Nosrak's condition for supplying its hats.

Fourth, Moore informed Mondragon before the Arizona Photo Shoot that trade work, where a business supplies wardrobe or other products for a photo shoot in exchange for being able

to use the photographs featuring those products later, is a common industry practice for professional photographers. Movant's Appx., APP.030 - Moore Decl. at ¶ 14.

There was an implied license from Mondragon to Nosrak to use the Asserted Photographs; and Moore's delivery of the Asserted Photographs to Nosrak pursuant to that implied license is neither direct infringement nor contributory infringement.

**4. No Limitation on the License**

Should Mondragon argue that he believed there were limitations to the license, it has already been admitted by operation of Rule 36(a)(3) that Mondragon did not place any restriction on the use of any of the Asserted Photographs before February—and the Asserted Photographs were first published by Nosrak in January. Movant's Appx., APP.007 - Juo Exh. A (Requests for Admission Nos. 4 and 5).

Moreover, Mondragon's "subjective intent is irrelevant." *Karlson v. Red Door Homes, LLC*, 18 F. Supp. 3d 1301, 1307 (N.D. Ala. 2014), *aff'd* 611 F. App'x 566 (11th Cir. 2015). Instead, "an implied license will be limited to a specific use only if that limitation is expressly conveyed when the work is delivered," *Latimer*, 601 F.3d at 1235, and there is no objective evidence that any limitation to the implied license was "expressly conveyed" by Mondragon to anyone before the Asserted Photograph were delivered.

**5. Because Mondragon Received Consideration, Mondragon Cannot Unilaterally Revoke the Implied License**

Nosrak supplied the hats as wardrobe for the Arizona Photo Shoot for nothing other than the right to use the resulting photographs of its hats. Mondragon affirmatively approved ("Love the hats") and used the hats for the Arizona Photo Shoot. Movant's Appx., APP.029–APP.030 - Moore Decl. ¶ 10–15. Thus, Mondragon received consideration from Nosrak in the form of

wardrobe to use for the Arizona Photo Shoot. *E.g.*, *Lucht's Concrete Pumping, Inc. v. Horner*, 255 P.3d 1058, 1061 (Colo. 2011) ("Valuable consideration . . . may consist either in some right, interest, profit, or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other.").

Where there is an implied license, and "plaintiff received consideration for that license, the plaintiff could not unilaterally revoke his grant of a license by announcing that he did not receive the deal or the consideration he actually wanted." *Karlson*, 18 F. Supp. 3d at 1316–17; *see also Avtec Sys. Inc. v. Peiffer*, 21 F.3d 568, 574 n. 12 (4th Cir. 1994). Because he received nonmonetary consideration, Mondragon cannot unilaterally revoke the implied license.

**B. Alternatively, Mondragon Cannot Assert Contributory Infringement Against Moore Because of Claim Preclusion (Res Judicata)**

On December 10, 2019, Mondragon moved to have his copyright infringement claim against Nosrak dismissed with prejudice. [ECF 121]. The Court granted the motion and dismissed Mondragon's infringement claim against Nosrak with prejudice on January 8, 2021. [ECF 131]. But Mondragon's contributory infringement claim against Moore hinges on the direct infringement claim against Nosrak because if there is no direct infringement then there is no contributory infringement. *E.g.*, *Sony*, 464 U.S. at 442 (1984).

"Claim preclusion [or res judicata] requires: (1) a judgment on the merits in the earlier action; (2) identity of the parties or their privies in both suits; and (3) identity of the cause of action in both suits." *Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 (10th Cir. 1999).

With respect to the first prong requiring a **judgment on the merits**, "claim preclusion applies to a dismissal with prejudice." *Meeper, LLC v. Powers*, No. 12-CV-01732-WYD-KMT, 2016 WL 369558, at *4 (D. Colo. Feb. 1, 2016); *see also Wainwright Sec. Inc. v. Wall St.*

*Transcript Corp.*, 80 F.R.D. 103, 106 (S.D.N.Y. 1978) ("a dismissal with prejudice, . . . has the effect of a final adjudication on the merits"); *D. A. C. Uranium Co. v. Benton*, 149 F. Supp. 667, 673 (D. Colo. 1956) ("a dismissal 'with prejudice' is a dismissal on the merits").

For the second prong, **identity of the parties** requires a showing that the parties are substantially in interest the same. *Lenox MacLaren Surgical Corp. v. Medtronic*, Inc., 847 F.3d 1221, 1241 (10th Cir. 2017). Courts may look to whether there is a substantial identity of interests and a working or functional relationship with respect to those interests. *Ramey v. Boulder Cty. of Colo.*, No. 10-CV-2672-WYD-MEH, 2011 WL 7005736, at *8 (D. Colo. Aug. 2, 2011), *report and recommendation adopted as modified*, No. 10-CV-2672-WYD-MEH, 2012 WL 94838 (D. Colo. Jan. 12, 2012). Courts also may look to whether the plaintiff's theory of liability aggregates the actions of the parties and "seeks to hold them liable for the same conduct." *Lenox*, 847 F.3d at 1241.

Here, Moore's earlier motion for cost bond [ECF 87] was joined by Nosrak [ECF 88]; and the Court's Order granting the motion noted that Moore corroborated Nosrak's license defense that Nosrak's hats were supplied for the Arizona Photo Shoot in exchange for using the resulting photographs to advertise its hats. [ECF 109]. The actions of Nosrak in publishing the photographs that Moore had delivered to Nosrak are aggregated in Mondragon's theory of liability. Nosrak and Moore had a substantial identity of interests as well as a working and functional relationship in defending against Mondragon's dubious copyright infringement claim.

As to the third prong, to determine **identity of the cause of action** for preclusion purposes, the Tenth Circuit has adopted the "transactional approach" where the cause of action includes all claims or legal theories of recovery that arise from the same transaction. *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 832 (10th Cir. 2005).

Here, Mondragon has alleged that Moore did not have permission to distribute the photographs to Nosrak, and contributed to the alleged infringement by Nosrak as a result. [ECF 112] at 4. This clearly is part of the same transaction, so there also is identity of the cause of action for claim preclusion to apply.

It would be manifestly unfair to allow Mondragon to maintain his counterclaim that Moore contributed to the infringement by Nosrak in the face of an adverse adjudication on the merits of the underlying direct infringement claim against Nosrak that is part of the same transaction.

## VI. CONCLUSION

An implied license is established here by the parties' conduct. Nosrak requested photographs featuring the hats that Nosrak supplied for the upcoming Arizona Photo Shoot, and Mondragon affirmatively used Nosrak's hats in creating the Asserted Photographs. Mondragon could not have created the Asserted Photographs of Nosrak's hats without first accepting the *quid pro quo* for using Nosrak's hats. As a result, Nosrak had an implied license for the Asserted Photographs. Moore's delivery of the Asserted Photographs pursuant to that implied license is neither direct infringement nor contributory infringement. In the alternative, Mondragon's copyright infringement counterclaim is subject to claim preclusion. Either way, the Court should grant summary judgment against Mondragon's counterclaim against Moore.

Dated: February 15, 2021.

*s/ James Juo*

James Juo
THOMAS P. HOWARD, LLC
842 W South Boulder Rd., #100
Louisville, CO 80027
jjuo@thowardlaw.com
303-665-9845

Counsel for Counterclaim-Defendant
Jessica Moore